## MILLER *v.* STEM.

1. A principal, when released from all liability growing out of an action against a surety, is a competent witness for him.

2. An objection to testimony, for want of notice of special matter, should appear to have been taken specially at the trial.

3. Under a plea that A. became surety, on the express agreement that time should not be given after maturity, evidence is admissible to show that at and after the maturity of the debt for which time was given, the principal had property sufficient to pay the debt, until he assigned in trust for creditors.

4. Where one became surety on condition that another would become a co-surety, evidence is admissible to show that the creditor was to call on the surety, and that the proposed surety was informed of the arrangement, and assented to it; and if the creditor failed to procure his execution of the instrument, the others are discharged.

5. Where the obligation of a principal is surrendered in consideration of another in which he is merely surety, he is, as respects that, entitled to all the rights of a mere surety.

6. Contradictory statements on different examinations, go only to the credibility of witness, and must be referred to the jury.

7. Giving a definite time to a principal for a consideration, discharges a surety.

IN error from the Common Pleas of Lehigh.

*March* 18, 19. Debt on a joint and several obligation, sealed by the defendant, together with John and Jacob Boas, E. Saeger, and Gangwer.

It was proved that defendant and another, trading as partners, were indebted to the plaintiff, and that E. Saeger bought out the defendant's interest in the business, and undertook to pay his debts; and among them that due to the plaintiff.

The plaintiff pressing for his money, the new firm agreed to give the obligation sued on, with the defendant as one of the sureties; and it was understood that one J. Saeger should also execute the bond as a surety.

After the obligation became due, the plaintiff, for a valuable consideration, agreed to give a certain time for payment to the principal debtors.

The errors assigned were the following:

1. In admitting as witnesses for the defendant the principal debtors.

They were released by the plaintiff at the trial from all costs or causes of action on account of this suit.

2. In permitting one of those witnesses to prove that there were

goods enough in their store after the maturity of the instrument, until they assigned in trust for their creditors to pay the debt. The notice of special matter on the record did not point to this fact; but the objection was general, and therefore the bill of exceptions did not show whether there was or was not a sufficient notice proved. But in the plea it was averred, that the defendant became surety on an express contract by plaintiff that the time for the payment should not be enlarged.

3. It was proved that one J. Saeger was to be also one of the sureties, but it did not appear that the plaintiff ever called on him for that purpose. The 3d error assigned was in permitting evidence to be given that the plaintiff was to call upon Saeger in a short time (apparently to procure his signature), and of the declarations of J. Saeger, that he was willing to execute the instrument as surety.

The charge of the Court, so far as it was excepted to, was, 1. That if the plaintiff knew of the situation of the defendant, and that his interest had been purchased, and then agreed to take the new firm as principals, and the others as sureties, then as between them defendant was to be treated as a surety.

2. If the sureties were to become so only in case. J. Saeger should do so, and the plaintiff was to procure his execution of the bond, and Saeger was willing to do this; but no request was ever made by the plaintiff; the contract was not consummated, and the sureties discharged.

3. The witness who proved that a definite time was given to the principals was shown to have stated the facts very differently on a previous examination. This was submitted to the jury as a matter going to his credibility, with instructions to disregard all he had said, if it was believed he testified to fill up the pinch of the cause.

In answer to the points the Court said:

1. That though defendant was originally a principal, and plaintiff refused to surrender his obligation, unless he joined in the new one, this would not prevent his becoming a surety under the circumstances above mentioned. (This was the 4th error assigned.)

2. Was the same as the 2d error above mentioned. (5th error.)

3. If plaintiff agreed to give time until the 1st of July following the maturity of the bond, in consideration of $3 received, the sureties were discharged. (6th error.)

4. Was the same as the 3d error. (7th error.)

*Porter*, for plaintiff in error.—The same principles that have excluded plaintiffs or assignors of choses in action from being witnesses, extends to defendants or parties liable for the debt: 1 Barr, 435; 12 Pet. 149; 3 Barr, 360. The witness was liable for the costs: Chitty on Bills, 349–50; 10 S. & R. 188.

2. There was no issue raised as to the damage from the delay, but merely whether there was a consideration and an agreement to forbear for a definite time. Such a notice is required by the rules of Court to be given fifteen days before the trial: 3 W. & S. 361; 14 S. & R. 444, 176; 1 Greenl. Ev. § 151; 5 Wh. 366; 5 Watts, 275; 2 Wh. 76; 5 W. & S. 103; 2 Barr, 88. 3. For the same reasons, the conversations with J. Saeger were inadmissible. They were also objectionable as hearsay; for he was not an agent of the plaintiff, nor were they part of the *res gestæ:* Greenl. Ev. § 99–100; 108–9. 4. How can a man be a surety merely for his own debt? 5. If the fact was that he was to be an additional surety, the whole contract is not avoided by his not joining. The damages are reduced *pro tanto* only. 6. The evidence does not prove the assumed facts.

*H. King*, contrà.

*March* 25. BELL, J.—The competency of Boas and Saeger, as witnesses for the defendant, after being released from liability for the costs of suit, was affirmatively determined when this case was here before: 2 Barr, 286; and nothing was advanced upon the last argument to induce us to depart from the conclusion then announced. The question does not fall within the doctrine of that class of cases, beginning with Post *v.* Avery; the object of which, we have more than once declared, was a return to the common-law rule, first departed from in Steele *v.* The Phœnix Ins. Co.; Carter *v.* Truman, 7 Barr, 325. See also, on this point, Berghaus *v.* Alter, 9 Watts, 386; Cameron *v.* Paul, 6 Barr, 322; and Talmage *v.* Burlinghame, 9 Barr, 25.

The admissibility of the fact, to which E. J. Saeger was permitted to testify, that in August, 1842, and subsequently down to the time of the assignment made by Boas and Saeger, there were goods enough in their store to pay the demand in suit, is contested in this court on two grounds; first, that no averment of actual loss, sustained by the defendant from the negligence or forbearance of the plaintiff, was contained either in the plea or notice of

special matter; and, therefore, as the evidence objected to was not pertinent to the issue tendered, it was, secondly, irrelevant, and consequently improperly received. But, so far as can be gathered from the record, the second was the only ground of objection taken on the trial of the cause; or at least it does not appear that the want of special notice was at all relied on. Now in Hobson v. Craft, 9 Barr, 365, we have said, and I think correctly, that where an objection to evidence is founded on alleged want of notice, it should be so specifically stated; for otherwise it is impossible to say, whether notice was or was not given, since, without a call made for it, it cannot appear of record how the fact was. If this be not done, it is too late to take such an exception in the Court of error. Setting aside then this ground of resistance, the evidence was certainly pertinent to one of the subjects of inquiry involved in the cause, to show the defendant has incurred actual loss from the alleged misconduct of the plaintiff in giving time to the principal debtor, without the knowledge or assent of the alleged surety. But was not this evidence strictly receivable in support of another branch of the defence, duly set out in the plea? This was, that at the execution of the bill single, it was covenanted that the obligee should sue it out at maturity, if the money were not then paid. Now, whether the defendant eventually succeeded in establishing the fact of such an arrangement to the satisfaction of the jury, is a point of no consequence in the determination of this question of evidence; for certainly he had a right to adduce every circumstance necessary to such a defence; though finally he failed to prove it in every essential feature. And I think it cannot be doubted that, in this connexion, it was of importance to show the pecuniary condition of the principal debtors, at the moment their liability to pay became absolute, and afterwards. Even if it be admitted that this was not imperatively necessary to make good this line of defence, we cannot say it was so entirely independent of it as to be foreign and impertinent. Would not the solvency of the principal obligors at the maturity of the bill, have presented a legal excuse for not pursuing them at law? And if so, was it wholly irrelative to show their continued ability to pay, down to the period of their assignment in trust for creditors? But it is a sufficient answer to an objection of this character, that the offered testimony tends in the slightest degree to sustain any material averment. If it may have this effect under any of the contingencies to which a cause in the progress of trial is liable, it would be hazardous to exclude it; and it may at

least be said of the proof now in controversy, that it is corrobora-
tive of the defendant's allegation of the plaintiff's agreement to
accept Boas and Saeger as principal debtors, and that he subse-
quently undertook to indulge them with an extension of the time
of payment; since it is much more likely these arrangements would
be made with solvent traders, than with those who were bankrupt,
or likely immediately to become so.

The evidence embraced in the fourth bill of exceptions was also
relevant, as it tended to establish the allegation of the plaintiff's
agreement to procure the signature of Joseph R. Saeger as a party
to the obligation. The fact that the obligor, E. J. Saeger, informed
his father of this agreement immediately upon his return home, and
before any default on the part of the plaintiff, offered, certainly,
some evidence that such an understanding had taken place between
the parties. Nor is it obnoxious to the objection that it was mere hear-
say. It is rather to be regarded in the light of a fact, consisting
of a communication made to a proposed party in the transaction,
and his assent to it. Its competency is in no degree impeached,
because the fact owed its existence to oral intercourse. It does not
therefore come within the principle which excludes mere hearsay, or
conversations between third persons in the absence of him who is to
be affected by them.

We have failed to discern any error in the charge of the Court.
The facts in proof seem to have been candidly stated, and the legal
principles applicable to them lucidly given to the jury. One ground
of defence was, that the agreement of the parties present at the
execution of the note was that General Saeger was also to become
a party to the bill single, as one of the sureties. In reference to
this, the Court instructed the jury that, if the other sureties con-
sented to lend their names only on condition that Saeger should
join them in this responsibility, and Miller agreed to make applica-
tion to Saeger for his name, but neglected to do so, though the
former was willing to comply with the arrangement, the contract
was not perfected, through default of the plaintiff, and, consequently,
he could not recover.

It is not to be doubted that this was a true exposition of the law.
Such a defence, sustained by proof, goes to the whole claim, and
not merely to such proportion of it as Saeger might have been
compelled to discharge had he become a co-surety. The case was
expressly put upon proof of a condition influencing the action of
the defendant; and if such was the case, surely he had a right to

insist upon its violation as affording him full protection.   If it were merely understood that Miller was to make an effort to procure Saeger's name, without reference to any effect it might have upon the obligatory character of the defendant's undertaking, a failure to make the effort might not operate to discharge Stem.   But the position assumed by the defendant is the presence of an undertaking in the nature of a condition, and this is the view in which this part of the case was presented to the jury.   Was there evidence to justify this?   I think there was.   It may not have been conclusive, or, indeed, stringently convincing; but its defects were open to observation, and no doubt, on the trial, these were fully and cogently commented upon.   It is enough to justify the instruction given, that there was some proof of the alleged agreement, which the Court necessarily referred to the jury.   It is impossible to say what conclusion they adopted, since the allegation of indulgence extended by the holder of the bill to the principal debtors, if proved, justified the verdict.   As this branch of the defence was perhaps more clearly established than the other, it is probable the decision of the case turned upon it.

But it is urged that there was neither sufficient proof of the defendant being a surety, nor of a contract to forbear suit against Boas and Saeger, for a definite period, upon a sufficient consideration.   The idea seems to be that, as Stem was a principal in the original bill single, he must be taken to have so continued as a party to the second obligation, inasmuch as the debt, to secure which these were given, was contracted by himself and his then partner.   But this argument overlooks the material fact that he had withdrawn from the partnership, after transferring the stock in trade to his copartner, who, it is testified, undertook to pay the debt in question.   It is true this arrangement could in no degree affect Miller's rights, who might have insisted on retaining his hold on Stem, as principal debtor.   But had this course been pursued, the latter might have refused to give a new obligation, and thus compelled payment of the old out of the stock in the store. · There is evidence that this was his determination; for it is in full proof he refused to execute the second obligation, except in the character of surety, and that Miller agreed to accept him in that character.   If, in pursuance of this arrangement, the first bill single was surrendered upon the execution of the second, it is in vain to say Stem might be charged as principal, though the claim against him as surety failed.   By the second arrangement, the original transaction

was cancelled and obliterated, and the parties stood towards each other as if it had never existed. If, then, the relation of creditor and surety existed, was there any competent proof, upon which a jury might be called to pass, of an agreement to give a further definite time for payment to the principal debtors, without the knowledge of the surety? I agree that, in order to operate a discharge of the surety, the evidence of such a contract ought to be so full and explicit as to disclose its nature, terms, and consideration. But when this is done, it is for the jury to say whether, in these particulars, the evidence is satisfactory. The Court cannot assume this function, without committing a usurpation under our system.

In the instance in hand, the President of the Common Pleas very fairly called the attention of the jury to the circumstances which led to the execution of the second bill, and the facts which took place after it fell due; and, stating the legal principles that were to govern their deliberations, submitted to them the disputed facts of suretyship and forbearance. I have already said, of the first of these there was proof, and the same observation is true of the second point, if the testimony of John D. Boas, in some degree sustained by his partner, Saeger, is at all to be relied on. He swears that, at the suggestion of Miller, made after the note matured, in the store of the partners, he paid Miller $3 or $5 to purchase an extension of time until the succeeding July, which Miller expressly agreed to give. Here, then, is proof of place, circumstances, consideration, and definite time, followed by the forbearance stipulated, fully sufficient to satisfy the exigencies of the note, of which the answers given to the plaintiff's points, taken in connexion with the general charge, we think sufficiently instructed the jury. It may be they ought not to have given credence to the witness, but this was not the fault of the Court. But the plaintiff complains that it was remiss in not instructing the jury altogether to discredit the evidence delivered by John P. Boas, because of the alleged contradictions and discrepancies observable on a comparison of his former testimony with that given on the trial. Had the Court done so, it would have been error. The credit due to witnesses is a subject for the jury, and there is no rule which dictates the entire discredit of a witness who varies in his statements, unless the contradiction be satisfactorily explained by himself. He is undoubtedly entitled to an opportunity to do so: 1 Greenleaf's Ev. § 462 and note; but his failure of success will not necessarily

destroy his credit. It would be a harsh rule, indeed, that worked such a consequence, while the tribunal might be entirely satisfied, *aliunde*, of innocent causes producing the variance. The Judge who tried the cause justly remarked that much depends on the mode of examining a witness, and the distinctness with which his attention is called to a peculiar aspect of the case. He might have added, that ingenuous and unpractised witnesses sometimes become so confused under the severities of a cross-examination, particularly where contradictions are charged upon them, as to be incapable of giving explanations, although all who hear are satisfied of the deponent's honesty. Here, Boas was attacked under the allegation of discrepancies suggested by dishonest views. The Court told the jury if they thought such was the fact, they ought to disregard all he had said, but, otherwise, they were not bound to do so. We must look at this instruction with an eye to the ground upon which it was attempted to impeach the witness; and so regarded, we do not find any error in it.

On the whole, we are satisfied the trial of the cause was properly conducted, and the instructions given to the jury correctly founded. Nor is there any soundness in the complaint that the Court declined or evaded the duty of specifically answering the plaintiff's points. The responses were sufficiently clear, and very properly looked to all the facts in proof.

Judgment affirmed.