## Commonwealth *v.* Parente, Appellant.

126

Argued April 10, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Everett Kent,* for appellant.

*Robert Ungerleider,* First Assistant District Attorney, with him *Edward G. Ruyak,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., June 11, 1957:

The defendant was convicted and sentenced on a charge of occupying a certain place in the City of Bethlehem with books, apparatus and paraphernalia for the purpose of recording and registering bets and wagers. He contends that the court below erroneously refused to grant his motions in arrest of judgment and for a new trial.

The defendant was charged with the violation of section 607 of the Act of June 24, 1939, P. L. 872, 18 PS §4607, which provides, inter alia, that "Whoever . . . occupies any place with books, apparatus or paraphernalia for the purpose of recording or registering bets or wagers, . . . is guilty of a misdemeanor . . ."

Appellant contends that "the Legislature intended that an occupier was one who brought to a place certain apparatus and articles, and if it could be shown that he occupied the place for gambling purposes, he was guilty of having assumed that status." We cannot accept this definition of "occupies". One can "occupy" a place, as the term is used in the statute, without having "brought" the apparatus and articles to the place. One "occupies" when he "does business in" or "holds possession of." See Webster's New International Dictionary, Unabridged, 2nd Edition.

In *State v. Deppe,* 286 S. W. 2d (Mo.) 776, 779 (1956), it was held that evidence indicating that the

defendant was physically present in a room and that his physical presence was in connection with scratch sheets, was sufficient to sustain a conviction of *occupying* a room with any books, sheet, blackboard, instrument or device or substance for the purpose of recording or registering bets or wagers.

The appellant contends there was not sufficient evidence to sustain the conviction.

The jury could have found the following facts from the evidence: At the time of the raid the defendant was in the room standing behind a desk on which was an electric adding machine, a telephone, and slips with number bets, and, in front of which, on the floor was a roll of papers with number bets; he was in his shirt sleeves, and his jacket was hanging on the wall; slips with numbers, identified as gambling paraphernalia, were on the desk; during the raid there was a telephone call to "Dick" taken by one of the officers wherein about 100 bets were placed on different numbers; there were twenty-three additional telephone calls, in which the callers asked either for "Dick" or "Tony" and were told by the officers that the party requested was not there, but that the speaker was the other one, and in a number of these calls bets were given; in the office there was a desk, desk chair, telephone, adding machine, adding machine tape, numbers slips, two bundles or packets of numbers and "hits" for April 24th and 25th, 1956 (the two days immediately preceding the raid) coin wrappers, paper pads, and "control sheets"; to the question "Do you make a lot of money in this business?" defendant replied, "It's not as easy as you think it is. Some people call in and make bets and then when they lose, they don't pay . . ." Trooper Ritsick testified that defendant said, "Well, I come in here to answer the phone for Tony", and when the officer asked "And take numbers?" defendant replied "Yes". When

asked "How about horses?" defendant again said "Yes".

There was sufficient evidence to sustain the conviction. See *Commonwealth v. Cerzullo*, 175 Pa. Superior Ct. 330, 104 A. 2d 179 (1954).

Counsel for appellant suggests that "The courts of Pennsylvania have gone far astray on the subject of admitting the substance of telephone calls in cases like this." Counsel seems to acknowledge that the evidence concerning telephone calls was admissible under the decisions of this Commonwealth, but suggests that the cases were wrongly decided. We have not been convinced that this Court should attempt to change the well established law on this point. *Commonwealth v. Prezioso*, 157 Pa. Superior Ct. 80, 41 A. 2d 350 (1945); *Commonwealth v. Palace*, 164 Pa. Superior Ct. 58, 63 A. 2d 511 (1949); *Commonwealth v. DuHadway*, 175 Pa. Superior Ct. 201, 103 A. 2d 489 (1954).

Counsel for defendant argued to the jury that the officers' testimony should be rejected in its entirety because they had falsely represented themselves as "Dick" or "Tony" when receiving telephone calls. He argued that under the maxim "falsus in uno, falsus in omnibus," the jury should conclude that all of their testimony was false and therefore should reject all of it.

In his charge, the trial judge said, "The learned counsel for defendant used a Latin phrase that if a witness intentionally testified falsely in one matter you may find that he testified falsely in all things and may reject all of the testimony of such a witness. You need not apply that harsh rule. You may winnow out the false from the true and reject the false and accept the truth. It is within your determination." The appellant contends this was error.

The notion first associated with the maxim "falsus in uno, falsus in omnibus" was that where the jury found the witness wilfully falsifying, the entire testi-

mony of that witness must of necessity be rejected. Wigmore on Evidence, 3rd Edition, Vol. 3, page 675; *Miller v. Stem,* 12 Pa. 383, 390 (1849). That the jury "must" or "ought" to reject all the testimony of a witness who has deliberately falsified in a part of his testimony has been abandoned as an unsound doctrine. For a trial judge to charge that a jury must reject all of the testimony of such a witness has been held to be reversible error. *Commonwealth v. Levine,* 74 Pa. Superior Ct. 491 (1920) ; *Commonwealth v. Ieradi,* 216 Pa. 87, 88, 64 A. 889 (1906).

The Supreme Court said in the *Ieradi* case, "The maxim falsus in uno, falsus in omnibus, has modernly been relaxed and restricted in its application. The rule is, that if a witness wilfully and corruptly swears falsely to any material fact in a case, the jury are at liberty to disregard the whole of his testimony: 30 Am. & Eng. Ency. of Law (2d Ed.), 1072. But the correct principle goes no farther than to say that the jury may disregard the testimony, not that they must disregard it."

In *Western Show Co., Inc. v. Mix,* 315 Pa. 139, 143, 173 A. 183 (1934) this was reaffirmed as the proper "scope of the maxim".

It should be noted that before the doctrine is applicable, the falsehood must be "wilful and corrupt". Contradiction or self-contradiction are alone insufficient. *Miller v. Stem,* supra; *Sopherstein v. Bertels,* 178 Pa. 401, 35 A. 1000 (1896).

It should also be noted that, as the rule is defined by our Supreme Court, the falsehood must be on a material point. This is the rule because, says the Georgia Supreme Court in *McLean v. Clark,* 47 Ga. 72, "it seems absurd to charge a witness with wilfully telling falsehoods immaterial to the issue in hand."

John Henry Wigmore in the Third Edition of his treatise on Evidence, Vol. III, Sec. 1008, criticizes the

maxim in the following caustic language: "It may be said, once for all, that the maxim is in itself worthless; —first, in point of validity, because in one form it merely contains in loose fashion a kernel of truth which no one needs to be told, and in the others it is absolutely false as a maxim of life; and secondly, in point of utility, because it merely tells the jury what they may do in any event, not what they must do or must not do, and therefore it is a superfluous form of words. It is also in practice pernicious, first, because there is frequently a misunderstanding of its proper force, and secondly, because it has become in the hands of many counsel a mere instrument for obtaining new trials upon points wholly unimportant in themselves."

The maxim has been limited, qualified, criticized, and, in a sense, rejected by both authors and courts, so that what remains might be stated thus: When a fact finding body concludes that a witness has deliberately falsified in his testimony on a material point this should be taken into consideration, along with many other tests, in determining what credence should be given to the balance of his testimony.

Counsel in the case now before us was apparently using the maxim in order to persuade the jury to reject the sworn testimony of a witness because, when not under oath and for the purpose of obtaining evidence as an officer of the law, he falsely said in answering the telephone that he was "Dick". The maxim is applicable only when "a witness wilfully and *corruptly swears* falsely to any material fact." If the maxim was improperly defined, or not properly applied to the evidence by counsel in his argument to the jury, it was proper for the trial judge to state the correct rule.

The appellant contends that he should have been granted a continuance. Concerning this the court below said: "The present charge was brought against An-

thony Lizza and Richard Parente. The record papers disclose that the information was lodged with the alderman on April 26, 1956, and that following preliminary steps of the case, a true bill was returned by the Grand Jury on June 12, 1956. The testimony of the case indicates that Lizza and Parente are uncle and nephew and that there was a more than casual social, as well as blood, relationship existent between them. The testimony discloses that Parente visited his uncle regularly and made gifts to him of Jewish rye. When the case was listed for trial September 11, 1956, five months after the information and three months after indictment found, defendant, for the first time, moved for a continuance. The sole reason assigned for the motion was that defendant had learned that Anthony Lizza, who had confessed his guilt, was an inmate of a convalescent home and suffered from a mental illness. No explanation was given why defendant had not learned of the situation previously. No effort was made to excuse the belated application, and no offer was made that Anthony Lizza might become available at a later date if the continuance were granted."

Ordinarily, it is within the discretion of the trial judge to grant or refuse a continuance. *Commonwealth v. Schlessinger*, 89 Pa. Superior Ct. 139 (1926) ; *Commonwealth v. Capps*, 382 Pa. 72, 114 A. 2d 338 (1955) ; *Commonwealth v. Morrison*, 180 Pa. Superior Ct. 121, 118 A. 2d 258 (1955).

We see no abuse of discretion in the refusal of the court below to grant the continuance.

Another contention of the appellant is that the trial judge unduly emphasized the case of the Commonwealth, and minimized the case of the defendant. The record does not indicate that there is any merit to this contention. It does indicate that the trial was conducted with fairness to the defendant.

Appellant claims that the trial judge "excluded defendant's counsel's speech and arguments from the jury," thereby denying the defendant his constitutional right to counsel.

The court charged as follows: "You, as members of the jury, are the sole judges of all of the facts of the case and of the credibility of the witnesses. Don't let counsel go into the jury room with you. That is a figure of speech. Of course, they won't go in physically, but don't let their remarks which they made during the trial or in their closing speeches, don't let the remarks that the Court is making concerning the facts of the case go out to the jury room with you. You are the sole judges of the facts, and guard that right jealously. It isn't for us to say what the facts are. It is solely for you to determine the facts of the case, and you determine them from the evidence."

In the opinion of the court below it is stated: "The portion of the Charge to which defendant objects was intended to convey to the jury its duty as the *sole judge of the facts.*"

It is the duty of the jury to weigh the evidence in the light of the arguments of counsel, although it is free to reject any suggestion of counsel as to the inferences which should be drawn from the testimony. Juries should not be told to ignore counsels' addresses. *Commonwealth v. Polichinus,* 229 Pa. 311, 78 A. 382 (1910); *Commonwealth v. Wood,* 118 Pa. Superior Ct. 269, 179 A. 756 (1935); *Commonwealth v. Brown,* 309 Pa. 515, 524, 164 A. 726 (1933).

Juries should be told that the determination of the facts is exclusively for them, and that if their recollection of the testimony differs from that expressed by either court or counsel, it is their recollection which should govern, and that if the inferences which they

think should be drawn from the facts established to their satisfaction, differs from those suggested by court or counsel, they should follow the inferences which they think should be drawn. This thought is sometimes expressed by trial judges telling juries that they are to determine the facts irrespective of what other persons, including court and counsel say to them about the facts. This instruction standing alone could be misleading, but it is generally followed by the trial judge telling the juries that although they may reject the arguments of counsel, it is their duty to examine the evidence in the light of counsel's argument.

A trial judge should charge the jury substantially as follows on this point: "The determination of all the facts in the case is exclusively for the jury. It is your duty to accept from the judge the rules of law governing the case, and you should not disregard what the judge says to you about the law. But as to the facts of the case you are the exclusive judge. If your recollection of the evidence differs from that expressed by court or counsel, it is your recollection which is to govern. If the inferences which you think should be drawn from the facts established to your satisfaction differ from the inferences suggested to you by court or counsel, you should follow the inferences which you think should be drawn. If your judgment of what the evidence establishes differs from that suggested by court or counsel you should follow your own judgment. You should not infer from this, that you are to ignore what learned counsel have said to you in their addresses; it is not only your right but your duty to consider their arguments, and to view and examine the evidence in the light of what counsel have said. But you have the right to reject any or all of their arguments, for the determination of the facts is exclusively for you."

No objection was taken to that part of the charge which appellant now claims was reversible error.

Appellant was represented by experienced counsel, who apparently followed the charge carefully, for at its close he accepted the trial judge's invitation for suggestions by making several. Had he then believed that the judge's charge concerning counsel's address was prejudicial to his client he presumably would have referred to it when discussing the charge with the trial judge, and would have noted an exception. As the suggestions which counsel did make at the close of the charge were fully and fairly complied with by the trial judge, we can assume that a mere mention of his objection would have resulted in a clarifying statement concerning the use the jury should make of counsel's argument.

It is the duty of counsel to call attention to matters which have not been properly covered in the charge. Counsel may not remain silent and take his chance of a verdict, and then, if it is adverse, complain of matters which could have been immediately rectified. *Commonwealth v. Walker,* 178 Pa. Superior Ct. 522, 116 A. 2d 230 (1955); *Commonwealth v. Napoli,* 180 Pa. Superior Ct. 266, 269, 119 A. 2d 846 (1956).

In *Commonwealth v. Wood,* supra, the judge's attention was specifically called by counsel to the objectionable portion of the charge concerning the effect to be given the arguments of counsel. In *Commonwealth v. Polichinus,* supra, a capital case, it does not appear from the opinion whether a specific objection was taken to the part of the charge in question, but the Court did refuse to consider another specification of error because no objection had been made during the trial. In *Commonwealth v. Brown,* supra, the Court noted that the part of the charge with which we are concerned had been "duly excepted to." (page 523).

It has been repeatedly held that only where the errors in the charge are basic and fundamental *and could not have been corrected at the trial* will an appellate court consider them under a general exception. *Steele v. France,* 363 Pa. 165, 167, 69 A. 2d 368 (1949) ; *Nicola v. American Stores Company,* 351 Pa. 404, 406, 407, 41 A. 2d 662 (1945) ; *Keener v. Hupert,* 386 Pa. 412, 126 A. 2d 713 (1956) ; *McDonald v. Ferrebee,* 366 Pa. 543, 79 A. 2d 232 (1951) ; *Halpern v. Western Pennsylvania Chemical Co., Inc.,* 182 Pa. Superior Ct. 354, 357, 126 A. 2d 502 (1956).

If it appears that the error did not influence the jury or had but very slight effect, the verdict and judgment should stand, but if the error itself had substantial influence on the jury the verdict and judgment should not stand. *Kotteakos v. United States,* 328 U. S. 750, 764-765, 66 S. Ct. 1239, 90 L. Ed. 1557, 1566.

In *Commonwealth v. Phillips,* 183 Pa. Superior Ct. 377, 132 A. 2d 733 (1957), President Judge RHODES said : "It must be determined from all the circumstances whether a remark has a prejudicial effect; there is no fixed rule applicable to every case. An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate an otherwise fair trial."

See also *Commonwealth v. Savor,* 180 Pa. Superior Ct. 469, 119 A. 2d 849 (1956).

The challenged remarks of the trial judge were not specifically directed to the defense counsel because they clearly related to *both* counsel *and the court.* Reading all of the above quoted part of the charge indicates that the challenged part was directed to the thought that the jury was the sole judge of the facts, and that neither

counsel nor the court had that responsibility. We think that the remarks were not prejudicial to the defendant.

The appellant was well represented by an aggressive attorney whom the court below, of course, permitted to argue to the jury. We would not be realistic if we were to assume that the effect of that argument was destroyed by the somewhat ambiguous remarks made concerning counsel by the trial judge in his charge.

We are of the opinion that in the light of the whole charge, the remarks of the trial judge did not constitute basic and fundamental error that could not have been corrected at the trial had an objection been made, and, therefore, in the absence of an objection we think they did not constitute reversible error.

Judgment of sentence is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence, or any part of it which had not been performed at the time this appeal was made a supersedeas.