Roger TAYLOR, Plaintiff,

v.

The ALLIS–CHALMERS MANUFAC-TURING COMPANY, Defendant.

Civ. No. 35926.

United States District Court,
E. D. Pennsylvania.

March 28, 1969.

Edwin E. Naythons, Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiff.

Thomas E. Byrne, Jr., Krusen, Evans & Byrne, Philadelphia, Pa., for defendant.

SHERIDAN, District Judge, Sitting by Designation.

In this diversity action plaintiff seeks to recover from defendant for personal injuries resulting from an accident.

The jury returned a verdict for defendant. Plaintiff has moved for a new trial.

Plaintiff, a longshoreman and forklift operator, was employed by Atlantic & Gulf Stevedores, Inc. He sustained an injury to his leg while working on Pier 98, South Wharves, Philadelphia, Pennsylvania, when a forklift manufactured by defendant, The Allis-Chalmers Manufacturing Company, and leased to Atlantic, suddenly moved backward and pinned him against another forklift. The forklift was inoperative due to a bad battery, and it was during an attempt to start it that it moved backward.

Plaintiff presented three theories of liability: (1) negligence in designing and in maintaining the forklift; (2) breach of an express warranty that the forklift would not move unless the operator was seated on the seat; and (3) strict liability because defendant leased a forklift which was unreasonably dangerous to the user.

There were two charges of negligence: (1) the gearshift mechanism was improperly designed since it did not contain a blockout, and as a result vibration and gravity caused the gears to shift from neutral into reverse when the forklift started; and (2) either the hydraulic seat valve was improperly adjusted or there was improper synchronization between the detents in the selector place on the steering wheel and the detents in the gear mechanism below, and this improper adjustment or lack of synchronization was the result of defendant's failure periodically to inspect, maintain, and repair.

Plaintiff's expert testified there should have been a blockout and that the combination of vibration and gravity caused the forklift to move backward. Defendant denied there was any negligent design and introduced evidence that it had built in four safety features. One was a hand brake. If the hand brake had been on, it would have stalled the engine. The second was that the forklift could not be started unless the gearshift was in neutral because an electrical

current was broken when it was in any other gear. The third was that the forklift could not move backward unless it was in reverse. The fourth was a seat valve which required some weight in addition to the weight of the seat before the forklift could move.

The defendant produced evidence that none of the manufacturers of forklifts have blockouts on the selector mechanism because the operator must operate several levers with his right hand to lift and tilt the fork. The left hand is needed on the steering wheel. If a blockout were installed, the operator would have to take his left hand off the steering wheel to operate the blockout.

Plaintiff asserted that defendant breached an express warranty in its operational manual—that the forklift could not move unless the operator was on the seat. The battery was located underneath the seat which was fastened on one side by hinges. The seat in down position rested against a hydraulic valve which actuated the clutch when the operator was on the seat, thus permitting the forklift to move. Defendant answered that the statement in its manual meant that any weight, not necessarily the weight of the operator, would actuate the clutch, and that in this case the seat either fell or was slammed to the down position and it was the force from this which actuated the clutch.

The third theory was based on improper design with liability predicated on Section 402A of Restatement 2d Torts, which imposes liability, under certain conditions, on one supplying a product in a defective condition unreasonably dangerous to the user, aside from any question of negligence or breach of warranty.

The case was submitted on a special verdict. The jury found in defendant's favor on all three theories.

Plaintiff contends that the court erred in refusing to permit him to read into evidence admissions made by counsel in defendant's pretrial memorandum. There was no pretrial conference. Defendant, as required by the Rules in this district, filed a pretrial memorandum in which, under Section A dealing with facts and contentions, stated:

"The Defendant, Allis Chalmers Manufacturing Company designs, assembles, and markets a variety of industrial equipment including lift trucks known colloquially as 'chisels'. Under a contract with Atlantic & Gulf Stevedores, Inc., the defendant leased some of these chisels for use by Atlantic & Gulf in its stevedoring work. Minor maintenance was performed by employees of the lessee while *major maintenance was performed by the lessor, either on notice from the lessee that the particular equipment was not performing properly, or on a preventive maintenance schedule, whichever occurred first. * * *"* (Emphasis supplied.)

Plaintiff argues that this is an admission that defendant was responsible for major maintenance; and that its exclusion was prejudicial because defendant argued to the jury that Atlantic was responsible for maintenance.

There is nothing in the Standing Order of October 23, 1958, as amended, relating to pretrial conferences in this district, or in Rule 16 of the Federal Rules of Civil Procedure relating to pretrial conferences in general, which would sanction the use of this statement as an admission. The Standing Order provides that a party's pretrial memorandum will specify in Section A a brief statement of facts and contentions; Section E provides for stipulations, including designation of any documents for which counsel seeks agreement on admissibility at time of trial. This clearly implies a conference at which matters sought to be admitted will be discussed. Rule 16 clearly indicates that only admissions made at a pretrial conference and incorporated in a pretrial order are binding. It provides:

"The court shall make an order which recites the action taken at the conference, the amendments allowed to

the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. * * * "

■ The Section A statements are not judicial admissions. They were not made on the record during the course of trial, and were not included in a "pleading" which is generally considered to mean papers such as the complaint, answer, and reply which frame the issues. Rule 7, Fed.R.Civ.P.; Rekeweg v. Federal Mut. Ins. Co., N.D.Ind.1961, 27 F.R.D. 431; 64 Columbia Law Review 1123, at page 1127; 9 Wigmore, Evidence §§ 2588–2597; 4 Id. § 1058. Cf. Bigelow v. RKO Radio Pictures, Inc., N.D.Ill.1954, 16 F.R.D. 15; Wholesale Supply Co., Inc. v. South Chester Tube Co., E.D.Pa.1957, 20 F.R.D. 310. Moreover, they did not have sufficient formality or conclusiveness to be considered judicial admissions. Berner v. British Commonwealth Pac. Airlines, Ltd., 2 Cir. 1965, 346 F.2d 532. Whether statements by an attorney should be considered mere evidential admissions depends to a great extent on whether the statements were made within the scope of his authority. McCormick, Evidence § 244 at p. 520. 4 Wigmore, Evidence §§ 1063–1067. An attorney is not a person whose admissions may be used against the party-client, unless they concern the management of the litigation. Insofar as authority is to be implied from his mere general appointment as attorney, it extends only to the management of the cause. Ibid. § 1063. Certainly, an attorney's authority extends to making admissions in formal pleadings. It is not clear that his authority extends to making admissions in less formal documents, such as the pretrial memorandum, when the pretrial procedure clearly contemplates a formal conference on the matters contained in the memorandum, with agreements and admissions to be formally incorporated in a pretrial order.

■ In any event, the exclusion of this evidence did not prejudice plaintiff. The statement was that defendant performed major maintenance only (1) when informed by Atlantic that major maintenance was necessary, or (2) on a preventive maintenance schedule. At the time plaintiff offered the statement, there was no evidence that defendant had failed to perform maintenance in either situation. The court, therefore, excluded the statement with the provision that it would reconsider its ruling if evidence was introduced which would make the statement material and relevant to any issue. There is no evidence in either plaintiff's or defendant's case that defendant failed to respond to any request by Atlantic or that it failed to service in accordance with the maintenance schedule.

■ Plaintiff argues that the court erred in permitting defendant to call Mr. Bergonia, chief designer for defendant, as an expert witness because his name was not supplied to plaintiff either in the pretrial memorandum or at any time prior to trial in violation of an October 1, 1965, Standing Order of this court, which provides:

"Except for witnesses called on rebuttal or surrebuttal, a witness neither (1) named in any pre-trial memorandum or supplements thereto of any party, nor (2) authorized by the court in order to prevent manifest injustice, may not testify at the trial if timely objection is made by opposing counsel."

Defendant's pretrial memorandum indicated that it intended to call an expert in hydraulic transmissions and an expert in machine design, to be identified at a time prior to trial. At the trial, defendant offered to prove through Bergonia that certain design features which Mr. Pruyn, plaintiff's expert, testified were missing on the basis of an operation and maintenance manual, were in

fact incorporated in the forklift, and that Pruyn's testimony was based on a manual not applicable to the forklift model in question. Defendant stated for the record that about a day or two before trial he gave counsel the names of two experts, Williams and Bergonia. Counsel admits he was given the name of Williams, and was satisfied with his qualifications because he knew he had been defendant's parts manager for eight years. He denied Bergonia was mentioned. Plaintiff apparently was satisfied with the designation of the experts in defendant's pretrial memorandum.[1] If he was not satisfied, relief was available upon application to the court. Moreover, the offer was to rebut testimony of Pruyn. Plaintiff has not suggested any evidence about Bergonia discovered since the trial which might have affected his credibility or detracted from his testimony. Plaintiff was not prejudiced.

■ Plaintiff also attacks the testimony of Mr. Wood, a lawyer in the firm of defendant's counsel. Plaintiff says that Wood was not listed in the pretrial memorandum, but that in chambers it was agreed that he could testify to the identification of pictures. Plaintiff claims he was prejudiced because Wood testified that Pruyn moved the forklift into reverse with the gear shift lever, and that this reflected on the credibility of Pruyn who testified that the vehicle only moved when he put weight on the seat.

The partial record ordered by counsel does not support either a breach of an agreement made in chambers or plaintiff's statement with respect to Wood's testimony. It is true that when plaintiff objected to Wood, he stated that he "understood in chambers" that the witness was to be called to identify photographs. There is no indication of an "agreement" that Wood would be so limited. Also, plaintiff did not object because Wood was not listed in the pretrial memorandum.

The transcribed testimony of Wood shows only that he testified that he saw Mr. Shuster, a lawyer in the office of plaintiff's counsel, and Pruyn test the machine. There is no testimony as to how Pruyn moved it. But even if Wood testified that he saw the machine move backward only when Pruyn shifted into reverse, this could not affect Pruyn's credibility. Pruyn did not testify that the machine would move backward even though not in reverse gear; he testified that vibration and gravity caused it to go into reverse gear.

■ Plaintiff next contends that the court erred in permitting defendant to argue to the jury that the accident was caused when Rutter, the one attempting to start the forklift, may have bumped the gear shift lever, thus causing the gear to shift into reverse and move backward, since there is no evidence that anyone touched or bumped the gear shift lever. Counsel have the right to argue their own conception of what reasonable inferences should be drawn from the evidence, and if confined to the evidence and reasonable inferences drawn therefrom, the argument should not be narrowly limited. Keal Driveway Co. v. Car & General Ins. Corp., 5 Cir. 1944, 145 F.2d 345; Chapman v. Alton R. Co., 7 Cir. 1941, 117 F.2d 669; Commonwealth v. Parente, 1957, 184 Pa.Super. 125, 133 A.2d 561. Rutter, called by plaintiff, testified that it was his job to start any forklift that would not start; that in attempting to start this one he had the seat up and a jumper cable connecting from the battery to the battery on the other forklift; that he was partially on the stalled forklift with his right foot on the accelerator and his left foot down near the front wheel which required that he lean over the control area to push the starter. He also adopted a statement he had previously made that after the forklift started

---

1. "Expert in hydraulic transmissions to be identified." "Expert in machine design to be identified."

and with his foot still on the accelerator, the seat fell into down position, and that he thought that the seat knocked the gear shift into reverse.[2] He also testified that the forklift was in reverse before he stopped it. It was certainly reasonable to infer from this evidence that the forklift moved backward because the gear shift was bumped into reverse either by Rutter or by the seat, and that the force of slamming the seat actuated the valve underneath it. The argument was entirely proper.

Plaintiff next argues that the court erred in its failure to instruct the jury that defendant had the burden of proving any intervening negligence by Atlantic, which would be a superseding cause of the accident. This argument is based on the assumption that the concept of an intervening act as a superseding cause is an affirmative defense which the defendant has the burden to prove.[3] The cases cited by plaintiff go only to the proposition that it is the court's duty to instruct the jury on the burden of proof, and with this there can be no quarrel. Plaintiff has not cited a case to support his theory that an intervening act as a superseding cause is an affirmative defense with the burden on the defendant to prove it. Research discloses no Pennsylvania authority on this point. However, the Supreme Court of Texas, in Dallas Ry. & Terminal Co. v. Bailey, 1952, 151 Tex. 359, 250 S.W.2d 379, considered this question in the light of an argument by defendant that the trial court's charge erroneously placed on defendant the burden to prove that the negligence of a third party was an intervening act and superseding cause. The court held that "new and independent cause" is not an affirmative defense and places no burden on defendant to prove it, but held that the charge as a whole did not require a reversal:

"The theory of new and independent cause is not an affirmative defense; it is but an element to be considered by the jury in determining the existence or non-existence of proximate cause. In this respect it does not lie in the same field as issues of unavoidable accident and sole proximate cause which issues are not defined in the court's charge as elements of proximate cause and which issues this court has held, in many cases, must be submitted separately when raised by the evidence. * * * On the contrary, it is governed by the rule expressed by this court in the case of City of Panhandle v. Byrd, 130 Tex. 96, 106 S.W.2d 660, 662. In that case an issue was submitted to the jury inquiring whether a certain negligent act on the part of the defendant was a proximate cause of the plaintiff's injuries. At the defendant's request the court also submitted an issue inquiring whether the plaintiff's injuries were something 'which a person of ordinary prudence should have reasonably foreseen beforehand as likely to occur' from the defendant's negligent act. Although required to reverse the trial court's judgment because of the jury's conflicting answers to these questions, the court said: 'The court should not have submitted the requested issue. It comprehended but one element of the ultimate issue of proximate cause, which had been submitted in the main charge.'

"This court has held time and again that where there is pleading and evidence raising the issue of new and independent cause the trial court's definition of proximate cause must include the element of new and independent cause and that the phrase 'new and independent cause' must itself be defined. * * * But unless it be in

2. February 14, 1968, testimony of Louis Rutter, partial transcript, pages 25–28, 31–32.

3. Plaintiff raises no question with respect to the charge given (see partial transcript, pages 41 to 43, inclusive) which was in accordance with Wilson v. American Chain & Cable Co., Inc., 3 Cir. 1966, 364 F.2d 558.

the case of Mercer v. Evans, Tex.Civ. App., 173 S.W.2d 206, writ refused, a case in which the refusal of writ of error appears to have been improvident, so far as we have been able to discover this court has never held that a defendant was entitled to have an additional submission of this element of proximate cause in a separate issue. The trial court in this case having included the element of new and independent cause in its definition of proximate cause and having then defined new and independent cause should not have submitted the separate issue on new and independent cause. It follows that the erroneous placing of the burden of proof in the issue is no ground for reversing the trial court's judgment."

■■■■■■ This court agrees with the reasoning in the Bailey case. Intervening act as a superseding cause is not an affirmative defense, but rather is an element in determining whether plaintiff has met his burden to prove that defendant's conduct was a proximate cause of the accident. "No principle is better established than that in order to recover, the burden is on the plaintiff to prove that the defendant was negligent and that the negligence was the proximate cause of the accident." Mapp v. Wombucker, 1966, 421 Pa. 383, 219 A.2d 681. Proximate cause is that which, in a natural and continuous sequence, *unbroken by any efficient intervening cause,* produces the injury, and without which the result would not have occurred. Coyne v. Pittsburgh Rys. Co., 1958, 393 Pa. 326, 141 A.2d 830. In Boehm v. Borough of Bethlehem, 1897, 4 Pa.Super. 385, the court said:

" * * * That is to say where there are two independent causes either of which could be the proximate cause of the injury *the burden is on the plaintiff* to show that the one for which the defendant is responsible was the one which caused the injury sought to be recovered for. * * * " (Emphasis supplied.)

Finally, plaintiff argues that defendant did not request, nor did the court indicate it would give, a charge on intervening act and superseding cause in advance of the closing speeches as required by Rule 51 of the Federal Rules of Civil Procedure, and, therefore, he had no opportunity to argue it to the jury.

■■■■■ Rule 51 of the Federal Rules of Civil Procedure provides:

"Rule 51. Instructions to Jury: Objection

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall *inform counsel of its proposed action upon the requests prior to their arguments to the jury,* but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to *give an instruction unless he objects thereto before the jury retires to consider its verdict,* stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

This rule does not require the court to discuss in advance of the closing speeches its general charge on liability and damages; rather, the court is required to rule on specific requests for instruction submitted by counsel. The concept of intervening act as a superseding cause was an integral part of the general charge on proximate cause. The evidence indicated that part of the defense was the negligence of Rutter in the way in which he attempted to start the forklift, in slamming or causing the seat to fall so as to actuate the valve underneath it, and in bumping the gear shift. Under this evidence, a charge on proximate cause would not be complete without an explanation of intervening act as a superseding cause. See Webb v. Scott,

W.D.Pa.1950, 91 F.Supp. 8, 10. Plaintiff did not inquire of the court concerning its general charge. Cf. Western Machinery Co. v. Consolidated Uranium Mines, Inc., 10 Cir. 1957, 247 F.2d 685, 689. The discussion in chambers was limited largely to the requests of counsel.

■ The court charged on intervening act as a superseding cause after defendant, at the conclusion of the charge, brought to the attention of the court that it had not been given. In his brief, plaintiff states: "[P]laintiff argued to the jury without any prior knowledge that the court intended to charge on independent negligence of Atlantic & Gulf." Neither did he have prior knowledge there would be a charge on negligence, proximate cause, burden of proof, etc. Of course, these are basic principles which plaintiff assumed would be in the charge. Under the evidence, the principle of intervening act as a superseding cause was also basic, and it would have been error not to give it. Moreover, in his closing address, which followed plaintiff's, defendant stressed the negligence of Rutter as the sole cause of the accident. Plaintiff had full opportunity to answer in his rebuttal but chose not to do it. Plaintiff's only objection was that it was not warranted under the evidence. He did not object because of the lack of an opportunity to argue.

The motion for a new trial will be denied.