**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Francisco J. VICENS–RODRIGUEZ,**
**Appellant.**

Superior Court of Pennsylvania.

Submitted July 31, 2006.

Filed Oct. 30, 2006.

John T. Adams, Reading, for appellant.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for Com., appellee.

BEFORE: KLEIN, BENDER and McCAFFERY, JJ.

OPINION BY KLEIN, J.:

¶ 1 Francisco Vicens–Rodriguez appeals from the judgment of sentence entered against him in the Court of Common Pleas of Berks County following his convictions for kidnapping, simple assault, criminal attempt to commit theft by extortion and other related crimes. He was sentenced to a term of 5 to 10 years' incarceration to be followed by 7 years' of probation. Vicens–Rodriguez raises one issue on appeal, that being a claim the trial court erred in failing to give the "false in one, false in all" jury charge. *See* Pennsylvania Suggested Standard Jury Instruction (Criminal) 4.15. After a thorough review, we conclude the trial court properly instructed the jury on the issue of witness credibility. Therefore, we affirm.

**Factual Background**

¶ 2 On June 22, 2004, Vicens–Rodriguez and 3 others went to the home of Luz De La Cruz in search of her husband, Hector Santana. Santana was not there.[1] Later,

---

1. De La Cruz had previously obtained a pro-   tection from abuse order against Santana.

Santana came to the home and told De La Cruz that if he did not return in three days, she should take the children and leave. Santana left with a group of men.

¶ 3 Three days later, De La Cruz, while at work, received a phone call from her husband telling her it was very important for her to give him some money. During the call, another person took the phone from Santana and demanded $1,500 from De La Cruz. The man said Santana owed the money and that they had him bound and tied. Another man then took the phone and told De La Cruz that her husband would be released if they got the money. De La Cruz's employer called the police, who instructed De La Cruz to go to the Reading Police Department. On her way there, De La Cruz received another phone call, this time informing her that she now had to pay $2,000. After arriving at the station, Detective Cabrera answered incoming calls, posing as De La Cruz's brother.

¶ 4 De La Cruz testified that she had $3,800 saved to buy a house but that her husband knew about the money. She testified the money came from savings and from a $15,000 award received by Santana as a result of a lawsuit. Santana testified that he received either approximately $13,000 or $10,000 from the lawsuit and that he gave either all the money to De La Cruz or about $5,500 to her. De La Cruz also testified that she obtained the PFA against Santana because of changes in his personality which she suspected were drug related. She testified she did not know if he used any drugs other than marijuana, although Detective Cabrera testified De La Cruz told him Santana used several bags of cocaine a day.

¶ 5 Detective Cabrera eventually set up a meeting with the abductors and the defendant was subsequently arrested.

¶ 6 On appeal, Vicens–Rodriguez claims that since the testimony of De la Cruz and Santana was inconsistent on a wide variety of issues and that Santana admitted to lying about how much of the lawsuit money he gave his wife, he was entitled to the "false in one, false in all" jury charge.[2]

**Discussion**

¶ 7 "False in one, false in all" is a concept for assessing the weight of evidence. The maxim is simply a translation of the Latin phrase "falsus in uno, falsus in omnibus." It currently means that a jury may disregard the testimony of a witness if the jury believes that witness deliberately, or willfully and corruptly, testified falsely about a material issue.[3] The standard jury charge reads:

> If you decide that a witness deliberately testified falsely about a material point [that is, about a matter that could affect the outcome of this trial,] you may for that reason alone choose to disbelieve the rest of his or her testimony. But you are not required to do so. You should consider not only the deliberate falsehood but also all other factors bearing on the witness's credibility in deciding whether to believe other parts of [his][her] testimony.

2. In reviewing a challenge to a jury charge, we are required to view the charge as a whole and determine whether the charge adequately and accurately reflects the law and was sufficient to guide the jury properly in its deliberations. *Commonwealth v. Orlowski*, 332 Pa.Super. 600, 481 A.2d 952 (1984).

3. Many years ago, the maxim was held to mean that if a jury found a witness had deliberately lied, it must or ought to reject the entire testimony of that witness. *See Miller v. Stem*, 12 Pa. 383, 390 (1849). That instruction was held to be reversible error as early as 1906 in *Commonwealth v. Ieradi*, 216 Pa. 87, 64 A. 889 (1906).

Pennsylvania Suggested Standard Jury Instruction (Crim) 4.15

¶ 8 The Advisory Committee Note to the charge notes that the necessity of the charge is questioned by cases such as *Commonwealth v. Carey*, 293 Pa.Super. 359, 439 A.2d 151 (1981), and *Commonwealth v. Linder*, 284 Pa.Super. 327, 425 A.2d 1126 (1981). The Committee also notes that the charge in its current form is largely derived from *Commonwealth v. Parente*, 184 Pa.Super. 125, 133 A.2d 561 (1957).

¶ 9 Our Court in *Parente*, which ultimately determined the charge was not applicable because the alleged falsehood was not corruptly sworn to,[4] both defined the charge and criticized it:

> John Henry Wigmore in the Third Edition of his treatise on Evidence, Vol. III, Sec. 1008, critics the maxim in the following caustic language: 'It may be said, once and for all, that the maxim is in itself worthless;-first, in point of validity because in one form it merely contains in loose fashion a kernel of truth which no one needs be told, and in the others it is absolutely false as a maxim of life; and secondly, in point of utility, because it merely tells a jury what they may do in any event, not what they must do or must not do, and therefore it is a superfluous form of words. It is also in practice pernicious, first, because there is frequently a misunderstanding of its proper force, and secondly, because it has become in the hands of many counsel a mere instrument for obtaining new

trials upon points wholly unimportant in themselves.'[5]

*Parente*, 133 A.2d at 564.

¶ 10 As early as 1913 our Court has commented upon the limited scope of the doctrine. In *Blumenthal v. Green*, 52 Pa.Super. 292 (1913), our Court stated that the doctrine was limited because a falsifier usually tells many truths and it is the province of the court and juries to sift the true from the false, with corroboration being a potent factor. The observation regarding the province of court and juries is particularly appropriate and relevant.

¶ 11 As late as 1986 the necessity of the charge has been questioned. In *Burns v. Pepsi–Cola Metropolitan Bottling Co.*, 353 Pa.Super. 571, 510 A.2d 810 (1986), our Court once again commented:

> The propriety and necessity of giving the instruction has been repeatedly questioned by our court in criminal cases. *See, e.g., Commonwealth v. Maute*, [336 Pa.Super. 394] 485 A.2d 1138 (Pa.Super.1984); *Commonwealth v. Carey*, [293 Pa.Super. 359] 439 A.2d 151 (Pa.Super.1981); *Commonwealth v. Levenson*, [282 Pa.Super. 406] 422 A.2d 1355 (Pa.Super.1980); *Commonwealth v. Parente*, [184 Pa.Super. 125] 133 A.2d 561 (Pa.Super.1957). In *Commonwealth v. Parente, Id.* at 564, our court stated: The maxim has been limited, qualified, criticized, and, in a sense, rejected by both authors and courts, so that what remains might be stated thus: When a fact finding body concludes that a witness has deliberately falsified in his testimony on a material point this should

---

**4.** The police answered phone calls and falsely represented themselves as either "Dick" or "Tony" while investigating illegal gambling. Quite obviously, the police were not under oath when taking bets over the phone.

**5.** It would seem, in light of the last sentence quoted, that Wigmore was referring to the

strict version of the doctrine in which the jury is required to reject the entire testimony of a deliberately lying witness. It seems difficult to believe that new trials were being awarded with any regularity in cases in which the falsehood was merely tangential to the matter at hand.

be taken into consideration, along with many other tests, in determining what credence should be given to the balance of his testimony.

*Burns,* 510 A.2d at 814.

¶ 12 These comments harken back to the 1913 realization, announced in *Blumenthal,* that someone who tells a lie may also in other regards be telling the truth and that the court or jury needs to look at the testimony of the particular witness as a whole and the evidence in entirety to determine what to believe and what not to believe.

¶ 13 With the above in mind, we look to the specifics of the jury charge given in this case. In opening the charge, the trial court told the jury:

> Members of the jury, you are charged with remembering the testimony and remembering it correctly. If the attorneys commented upon the testimony and that differs from what you remember it to be, it is your recollection of the testimony that must prevail. When testimony is before the jury, the weight and credibility of every portion of it is for you and you alone to determine. And that is because you are the judge of the facts in this case.
>
> A duty which goes with judging the facts is the duty of appraising the credibility or believability of the witness. You cannot decide the facts until you decide who and what to believe or disbelieve. You have the sole responsibility of deciding whether the testimony of each witness in this case is truthful and accurate and is to be believed or disbelieved in whole or in part.
>
> There are a number of factors, as you know, we went over these on Wednesday. There are a number of factors which you may properly consider in determining credibility. These factors include, but are not limited to, the wit-

ness's ability to remember the events about which he or she testified; the certainty or doubt with which he or she testified; the fairness or bias demonstrated by the witness; the interest, if any, the witness has in the outcome of the case; the extent to which the witness's testimony is supported by or contradicted by other evidence in the case which you believe; the witness's degree of knowledge of the events about which he or she testified; the age, physical, mental or intellectual abilities or disabilities of the witnesses.

> In short, you should employ all of the factors which you use in your everyday life to assess the credibility and believability of the witnesses. Your common sense and your everyday experiences are your primary guides in determining the credibility of the witnesses.

N.T., 9/9/05 at 527–28.

¶ 14 This is an accurate rendering of guidelines to assessing credibility. Moreover, it encompasses a large portion of the "false in one, false in all" charge—that being the instruction to consider all relevant factors in considering credibility.

¶ 15 Later, the trial court specifically addressed the issue of false or inconsistent testimony:

> The Court: Now, you have heard evidence that a witness—and that would be Hector Santana and Luz—
>
> Asst. D.A.: De La Cruz
>
> The Court: De La Cruz. You have heard evidence that these witnesses, Luz De La Cruz and Hector Santana, made a statement on an earlier occasion that was inconsistent with his or her present testimony.
>
> You may, if you choose, regard this as evidence as proof of the truth of anything that the witness said in the earlier statement. You may also consider this

evidence to help you judge the credibility and weight of the testimony given by the witness at this trial. When you judge the credibility and weight of the testimony, you are deciding whether you believe the testimony and how important you think it is.

Now, where there is a conflict in the testimony, the jury has the duty of deciding which testimony to believe. But first you should try to reconcile; that is, fit together any conflicts in the testimony if you can fairly do so.

Discrepancies and conflicts between the testimony of different witnesses may or may not cause you to disbelieve some or all of their testimony. Remember that two or more persons witnessing an incident may see or hear it differently. Also, it is not uncommon for a witness to be innocently mistaken in his or her recollection of how something happened.

If you cannot reconcile a conflict in the testimony, it is up to you to decide which testimony, if any, to believe and which to reject as untrue or inaccurate. In making this decision, consider whether the conflict involves a matter of importance or merely some detail and whether the conflict is brought about by an innocent mistake or by an intentional falsehood.

You should also keep in mind the other factors already discussed which go into deciding whether or not to believe a witness. In deciding which conflicting testimony to believe, you should not necessarily be swayed by the number of witnesses on either side. On the other hand, you should also consider the extent to which the conflicting testimony is supported by other evidence in the case.

*Id.* at 532–33.

¶ 16 This portion of the charge reinforces the prior discussion on credibility and also specifically discusses how to deal with conflicts in testimony. Read in its entirety, as we are required to do, the charge given in this matter presented a sufficient explanation of the law. While the trial court did not give Standard Jury Instruction 4.15, the aspects of the charge discussing credibility are sufficient. The trial court charged the jury in the way the law has been explained by our courts for many years. *See Blumenthal, supra; Parente, supra; Burns, supra.*

¶ 17 While we do not necessarily agree with Wigmore's assessment that the charge is largely superfluous, if the other aspects of credibility are thoroughly discussed, it is not reversible error to fail to give the "false in one, false in all" charge.

■ ¶ 18 It is true that the "false in one, false in all" charge is a proper statement of the law, and there is no harm if that charge is given. However, we do hold that when a full and complete charge is given on credibility, as was done in this case, there is no error in failing to give the specific charge.[6]

¶ 19 Judgment of sentence affirmed.

¶ 20 McCAFFERY, J., concurs in the result.

─────────

**6.** We do not believe that this holding announces new law. Rather, it is at most a synthesis of prior case law explaining the uses and limitations of the "false in one" concept.