**CITY OF PHILADELPHIA**

v.

**PUBLIC EMPLOYEES BENEFIT SERVICES CORPORATION**

Civ. A. No. 93–0048.

United States District Court, E.D. Pennsylvania.

Jan. 13, 1994.

---

Christopher I. McCabe, Judith E. Harris, City of Philadelphia Law Dept., Philadelphia, PA, for plaintiff.

Rachel B. Eisner, Dechert, Price & Rhoads, Philadelphia, PA, for defendant.

## OPINION

PADOVA, District Judge.

This case involves alleged violations of state and federal securities laws and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, in connection with a municipal employee deferred compensation plan. Pursuant to Federal Rule of Civil Procedure 12(c), defendant has filed a motion for judgment on the pleadings. For the reasons set forth below, I shall grant in part and deny in part defendant's motion.

## I. FACTUAL ALLEGATIONS

Plaintiff's amended complaint contains the following factual allegations, which I must assume as true for purposes of the motion for judgment on the pleadings. Pursuant to Pennsylvania law,[1] the Philadelphia City Council passed an ordinance in 1982 permitting the City to adopt a deferred compensation plan for municipal employees. The City of Philadelphia's Employee's Deferred Compensation Plan ("Plan") was adopted on October 27, 1982. The Plan permits City employees to defer a portion of their income and to direct the investment of the deferred income among various investment options. Deferred income is not subject to federal income tax until the employee withdraws the funds.[2] Thus, City employees ostensibly participate in the program in order to avail themselves of the Plan's investment and income tax advantages.

On June 22, 1984, the City entered into an Administrative Services Agreement with defendant, Public Employees Benefit Services Corporation ("PEBSCO"), whereby PEBSCO was appointed as the exclusive adminis-trator and marketer of the Plan. One of PEBSCO's duties under this agreement was to recommend the various investment options that should be included in the Plan. The dispute in this case centers on life insurance investment option that PEBSCO recommended to the City.

In 1986, PEBSCO advised the City that life insurance should be offered under the Plan. After requesting proposals from various life insurance providers, the City followed PEBSCO's recommendation and appointed Peoples Security Life Insurance Company ("Peoples") as a non-exclusive underwriter of universal life and interest-sensitive insurance products. In January 1987, PEBSCO began marketing the insurance option ("Peoples policies") to Plan participants.

The City's amended complaint asserts that PEBSCO made materially misleading statements and failed to state material facts to Plan participants regarding the Peoples policies. First, PEBSCO promoted the tax benefits, but failed to disclose the tax disadvantages, of the Peoples policies. Specifically, PEBSCO stated that Plan members purchase the Peoples policies using pre-tax dollars. PEBSCO did not state, however, that *proceeds* of the Peoples policies, unlike proceeds of life insurance purchased outside the Plan, are subject to federal income tax. Second, PEBSCO stated that the Peoples policies accumulate cash values at current interest rates. PEBSCO failed to disclose, however, that if the policies were surrendered prematurely, the interest earnings were substantially lower than current interest rates. Third, PEBSCO failed to disclose that its agents and employees received substantial commissions and benefits from the sale of Peoples policies, but did not receive such benefits when Plan participants selected any of the Plan's other investment options. The City alleges that Plan participants relied on PEBSCO's representations and omissions to their detriment: from January 1987 until January 1993, Plan participants directed the

---

1. Pennsylvania law permits municipalities to establish deferred compensation plans that conform with the provisions of § 457 of the Internal Revenue Code of 1986. Pa.Stat.Ann. tit. 72, § 4521.2(e)(5) (Supp.1993).

2. Deferred income, however, remains subject to state and local income tax in the year earned. Pa.Stat.Ann. tit. 72, § 4521.2(f) (Supp.1993).

investment of over $3.8 million into Peoples policies, but the policies have a current aggregate cash value of less than $200,000. Further, plaintiff alleges that PEBSCO's commissions from the sale of Peoples policies have exceeded $1 million.

Based on these allegations, the City's amended complaint includes claims for violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, RICO, 18 U.S.C. § 1962(c), and numerous state law claims.[3] PEBSCO seeks judgment on the pleadings only with respect to the City's federal claims.

## II. STANDARD OF REVIEW

■■■ Under Rule 12(c) of the Federal Rules of Civil Procedure, the trial court must view the facts presented in the pleadings[4] and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *See National Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485, 489 (3d Cir.1992) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)). The court may enter judgment on the pleadings only if the moving party clearly establishes that no material issue of fact remains to be resolved and that she is entitled to judgment as a matter of law. *See Institute for Scientific Info., Inc. v. Gordon & Breach Science Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991).

## III. DISCUSSION

### A. Federal Securities Law Claim

■■■ PEBSCO argues that the City lacks standing to assert a claim under Rule 10b–5 because the City has not alleged that it was a purchaser or seller of securities. A private damages action under Rule 10b–5 may only be maintained by actual purchasers or sellers of securities. *See Blue Chip Stamps Co. v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). I have reviewed the amended complaint and conclude that plaintiff has sufficiently averred that the City purchased or sold securities. First, paragraph 15 of the amended complaint states that "the City retained legal title to all Plan assets." Second, paragraph 36 of the amended complaint states that "the City, at PEBSCO's direction, made weekly wire transfers of Plan assets ... for purposes of purchasing the Peoples policies." Finally, paragraph 62 states that "each transfer of funds among the investment options available under the Plan constitutes the purchase or sale of a security." Construing these allegations in the light most favorable to the non-moving party, I find that the amended complaint sufficiently alleges that the City was a purchaser or seller of securities, and hence has standing to assert a claim under Rule 10b–5.

■■■ PEBSCO also argues that the City has judicially admitted in a related case, *Robb v. City of Philadelphia*, No. 93–4328 (E.D.Pa. filed Aug. 10, 1993), that the City was neither a purchaser nor a seller of securities. In that case, arising out of the same set of facts as the present case, municipal employees sued the City and two individual defendants, claiming that the City violated § 10(b) and Rule 10b–5 in connection with the Plan. The City filed a motion to dismiss, and a memorandum of law in support of its motion. In the memorandum, the City asserted that it was "never involved in the purchase or sale of securities in connection with the deferred compensation plan." Mem.

---

**3.** Plaintiff's amended complaint includes state law claims for breach of fiduciary duty (Count I), negligence and gross negligence (Count II), violation of Pennsylvania securities law (Count IV), fraud (Count V), violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count VI), breach of contract, and tortious interference with contract and business relations (Count IX).

**4.** For purposes of deciding this motion, I shall consider both plaintiff's amended complaint and RICO case statement. *Cf. Glessner v. Kenny*, 952 F.2d 702 (3d Cir.1991) (considering both the allegations in the complaint and RICO case statement when ruling on a motion to dismiss). In addition, both parties stipulated at oral argument that the Plan document and the Administrative Services Agreement will be treated as part of the amended complaint. Accordingly, I may consider these documents for purposes of defendant's motion.

Law.Supp.Mot.Purs. Rule 12 at 8–9 n. 14. This statement, while apparently inconsistent[5] with the City's present position, does not constitute a judicial admission. *See Giannone v. United States Steel Corp.*, 238 F.2d 544, 547 (3d Cir.1956) (stating that judicial admissions are admissions in "pleadings, stipulations, etc."); *Taylor v. Allis–Chalmers Mfg. Co.*, 320 F.Supp. 1381, 1385 (E.D.Pa. 1969), *aff'd*, 436 F.2d 416 (3d Cir.1970), (admissions not made on the record during the course of trial, nor included in a pleading are not judicial admissions); Fed.R.Civ.P. 7 (distinguishing between "pleadings," and "motions and other papers"). Because the City's statement was not made on the record,[6] nor in a pleading, it does not constitute a judicial admission that PEBSCO may assert against the City.

Accordingly, construing the averments in the amended complaint in the light most favorable to the City, I conclude that the City has standing to assert a claim under Rule 10b–5.

## B. RICO Claim

Count VII of plaintiff's amended complaint asserts violations of 18 U.S.C. § 1962(c).[7] PEBSCO argues that the City's RICO claim fails on two distinct legal grounds. First, PEBSCO states that the City cannot plead a RICO "injury," and therefore lacks standing to assert a RICO claim. Second, PEBSCO avers that the City cannot establish that PEBSCO participated in the operation or management of a RICO "enterprise." I shall address each of these issues in turn.

### 1. Standing

■ PEBSCO argues that the City cannot assert a RICO claim in its own right because it has suffered no injury, and that the City cannot maintain a RICO claim on behalf of the Plan because the Plan is not a "person" entitled to sue under RICO. PEBSCO asserts that under Pennsylvania law[8] and the terms of the Plan document,[9] the City has no liability for any investment loss incurred by Plan participants. Because any decrease in Plan assets is offset by a corresponding decrease in the City's liability to Plan participants, PEBSCO argues, the City has not suffered any injury. In this context, PEBSCO urges me to recognize a "passing on" defense for civil RICO defendants that would prohibit the City from asserting its RICO claim in this case. I disagree with PEBSCO's conclusion that the City has not suffered a RICO injury, and I decline PEBSCO's invitation to recognize a "passing on" defense under the circumstances of this case.

5. In support of its motion to dismiss the *Robb* action, the City asserted that any misstatements or omissions made to Plan participants were made by PEBSCO, because PEBSCO, not the City, was responsible for administering and marketing the Plan. The City's averments that it was never "involved" in the purchase or sale of securities speaks more to the issue of whether the City made misstatements to Plan participants, and hence has *liability* under Rule 10b–5, than whether the City has *standing* to assert a claim under Rule 10b–5 against PEBSCO.

6. On the contrary, at oral argument the City specifically stated that it was a purchaser or seller of securities. Transcript ("Tr.") Dec. 10, 1993 at 47, 48.

7. The statute provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C.A. § 1962(c) (West 1984).

8. The Pennsylvania enabling statute provides:

Neither the Commonwealth ... nor any political subdivision shall be responsible for any investment loss incurred in the program, or for the failure of any investment to earn any specific or expected return or to earn as much as any other investment opportunity, whether or not such other investment opportunity was offered to participants in the program.

Pa.Stat.Ann. tit. 72, § 4521.2(g) (Supp.1993).

9. Section 7.04 of the Plan document states:

The PARTICIPANT specifically agrees that in the absence of gross negligence, fraud or willful misconduct, neither the EMPLOYER, the Director of Finance, the ADMINISTRATOR nor any EMPLOYEE thereof shall be accountable or liable for any investment loss or any other loss, charge or expense of any kind incurred under this PLAN and the PARTICIPANT alone shall bear the risk of any investment loss, or other loss, charge or expense of any kind incurred under this PLAN.

First, under Pennsylvania law, all deferred funds in the Plan remain an "asset of the political subdivision until such time as the funds are distributed to the participant or his beneficiary." Pa.Stat.Ann. tit. 72, § 4521.-2(h) (Supp.1993). Consequently, any diminution of the funds constitutes a direct reduction in the City's assets, and therefore constitutes a very real, and immediate injury to the City.

Second, the City's prospective reduction in liability is only speculative. By the terms of the Plan document, the City remains potentially liable to Plan participants for investment loss resulting from the City's gross negligence, fraud, or willful misconduct.

Third, even if I assume that § 4521.2(g) completely immunizes the City from *direct* investment loss liability, the statute does not shield the City from other *indirect* injuries.[10] For example, the City's bond rating may be adversely affected by the alleged significant diminution in municipal assets. In addition, the City's relations with its employees and its ability to recruit new employees may be seriously damaged by the perceived devaluation of an important employee benefit. I am not prepared to assume that the shadow cast upon the Plan by PEBSCO's alleged racketeering activity has not injured the City in a way that § 4521.2(g) does not reach.

■ Further, PEBSCO's attempted invocation of a "passing on" defense is inapposite.

In *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), the Court held that where a plaintiff claims that she has been overcharged for goods or services as a result of defendant's violation of the antitrust laws, the defendant cannot ordinarily defend on the ground that the plaintiff suffered no injury because she "passed on" the overcharge to her customers. The Court noted, however, that "there *might* be situations—for instance, when an overcharged buyer has a pre-existing 'cost-plus' contract, thus making it easy to prove that he has not been damaged—where the considerations requiring that the passing-on defense not be permitted in this case would not be present." *Hanover Shoe*, 392 U.S. at 494, 88 S.Ct. at 2232 (emphasis added). PEBSCO argues by analogy that "[h]ere the City has a pre-existing contract with the plan participants, under which any decrease in the City's plan assets is automatically offset by a corresponding decrease in the City's debt to the plan participants." Def.'s Mem.J.Pldgs. at 10. PEBSCO's reliance on *Hanover Shoe* is misplaced, and I have grave doubt as to the continuing viability of the passing on defense in *any* context, let alone in the context of a RICO cause of action. To the extent that the Court in *Hanover Shoe* created an exception to the general rule of not allowing a passing on defense, it did so very narrowly.[11] Further, I am persuaded by opinions from the Sixth [12] and Seventh Circuits [13] strongly suggesting

10. Section 4521.2(g) may not provide complete immunity, as local governments may remain liable for losses resulting from fraud, gross negligence, or willful misconduct. I have found no cases addressing § 4521.2(g), and the legislative history of the statute is not helpful. However, I need not construe the scope of the statutory immunity, because even if I assume that the statute provides *complete* immunity for investment losses incurred in the Plan, I still find that the City may have suffered other *indirect* injuries that the statute does not remedy.

11. *Hanover Shoe* only suggested that there "might" be situations where a passing on defense could be asserted. Further, in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), the Court again only suggested that a passing on defense "might" be appropriate in cases involving pre-existing "cost-plus" contracts.

12. In *County of Oakland v. City of Detroit*, 866 F.2d 839 (6th Cir.1989), *cert. denied*, 497 U.S. 1003, 110 S.Ct. 3235, 111 L.Ed.2d 747 (1990), the court held that counties that may have passed on overcharges for sewerage services to scores of municipalities were not deprived of standing under RICO. The court expressed serious doubt as to the existence of a pre-existing cost-plus exception to *Hanover*, and stated that the defense "might" only exist in cases where the defendant "sold a single item to a single middleman who has resold the item under a pre-existing cost-based contract to a single consumer." *Id.* at 849. The dispute in this case does not involve a single employee investing in a single investment, but rather involves thousands of employees and multiple investments.

13. The court in *Carter v. Berger*, 777 F.2d 1173 (7th Cir.1985), held that a county, rather than the individual taxpayers residing in the county, was the proper party to seek recovery from an

that the pre-existing cost-plus exception to *Hanover*, to the extent that it *ever* existed, today is so eviscerated that it is virtually non-existent.[14]

Accordingly, because PEBSCO has failed to demonstrate that the City has not suffered a RICO "injury," and because I decline PEB-SCO's invitation to recognize a "passing on" defense, I deny PEBSCO's motion for a judgment that the City lacks standing to assert the RICO claim in Count VII of the amended complaint.[15]

### 2. Operation or Management of RICO Enterprise

PEBSCO also argues that the City's RICO claim is defective because a) the Plan is not a valid RICO enterprise, and b) PEBSCO did not participate in the operation or management of the City itself. I will treat each of these issues in turn.

#### a. Plan as an Enterprise

A RICO enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4) (West 1984). The City argues that the Plan is 1) a resulting trust, and therefore a legal entity, and 2) an association in fact. The City is incorrect as to both assertions.

#### i) Resulting Trust

The City alleges that the Plan is a resulting trust, and therefore a legal entity enterprise. I disagree. In order for a trust to exist, there must be a separation of the legal and equitable interests in the trust corpus. *See* Restatement (Second) Trusts

§ 2 cmt. f (1987). A resulting trust is created by operation of law, and "arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property." *Gray v. Liberty,* 357 Pa. 130, 53 A.2d 132 (1947). Thus, the Plan can only be a resulting trust if: 1) legal and equitable title in the amounts deferred are separate, and 2) Plan participants made a disposition of their income to the Plan. Neither requirement has been satisfied in this case.

Section 457 of the Internal Revenue Code provides that in order to qualify for preferable federal income tax treatment, all amounts deferred under the plan, all property and rights purchased with such amounts, and all income attributable to such amounts "shall remain (until made available to the participant or other beneficiary) *solely* the property and rights of the employer (without being restricted to the provision of benefits under the plan), subject only to the claims of the employer's general creditors." 26 U.S.C.A. § 457(b)(6) (West Supp.1993) (emphasis added); *see also* Pa.Stat.Ann. tit. 72, § 4521.2(h) (Supp.1993) (stating that "[a]ll funds which shall be withheld or deferred ... in accordance with this act shall remain an asset ... of the political subdivision until such time as the funds are distributed to the participant or his beneficiary"). Because the Plan is a § 457 plan, and § 457 requires no division of title in the amounts deferred, the Plan cannot be a trust. Further, because § 457 requires that the deferred funds remain an asset of the City, Plan participants do not make *any* disposition of property, and therefore the Plan cannot be a resulting trust.[16]

individual who paid bribes to obtain lower property tax assessments. The court rejected the taxpayers' argument that because the county simply raised its rate of tax, it had suffered no injury. The court concluded that a victim of fraud is still an aggrieved party regardless of whether she may recover her loss from another source.

**14.** The only case cited by PEBSCO in which a RICO defendant successfully invoked the passing on defense involved a *single* plaintiff who had been overcharged for contract services, and had already been fully reimbursed by its *single* cus-

tomer. *See Arabian American Oil Co. v. Scarfone,* 713 F.Supp. 1420 (M.D.Fla.1989). I am not persuaded that the facts in the case before me are analogous to those presented in *Scarfone,* and decline to follow that result here.

**15.** Because I find that the City can maintain a RICO claim on its own behalf, I need not decide whether the City can maintain a RICO claim on behalf of the Plan.

**16.** The Sixth Circuit, in an unpublished opinion, applied similar reasoning and concluded that the

Because the Plan is not a resulting trust, it is not a legal entity enterprise.

### ii) Association in Fact

■ The City also argues that the Plan is an "association in fact" enterprise. PEBSCO challenges this assertion, and avers that the Plan is little more than a contract between the City and Plan participants. The City attempts to characterize the Plan more broadly, but has done so in an inconsistent and incoherent fashion.

First, the City's amended complaint asserts that the "Plan and the City are the 'enterprises' for the purposes of the RICO claim." Am.Compl. at ¶ 79. On March 8, 1993, the City was ordered to file a RICO case statement describing in detail the alleged enterprise, stating the names of the associations that constitute the enterprise, and stating the structure of the enterprise. The City's RICO case statement, however, simply restates that the Plan and the City are the alleged enterprises. RICO Case Stmt. at ¶ 5(a).

Second, in response to PEBSCO's motion for judgment on the pleadings, the City articulates a more expansive, yet inconsistent, description of the alleged association in fact enterprise. In its memorandum of law in opposition to PEBSCO's motion, the City first asserts that "the Plan constitutes an association in fact," and that "the Plan consists of an ongoing organization of individuals who invest their money under the framework established by federal and Pennsylvania statutes and the Plan Document." Pl.Mem. Opp.Mot.J.Pl. at 16. In this context, the City

seems to be alleging that the employees who participate in the deferred compensation program constitute the association. Yet in the very next paragraph, the City asserts that "the City is in a position to establish that it *and* the Plan Participants function as a continuing unit." *Id.* (emphasis added). This suggests that the alleged associates are the City *and* the employees who participate in the program. One page later, however, the City backtracks, stating that "the Plan Participants, as a group, are separate and apart from the pattern of racketeering activity in which PEBSCO has engaged." *Id.* at 17.

The City's position was no clearer at oral argument, where the City seemingly asserted that the alleged association in fact encompassed not only the Plan participants, but also the City's finance director and the employees within the City who work on the plan. Tr. at 24. Although I must view the facts in the City's pleadings in the light most favorable to the City, I am not required to be a mindreader. I cannot determine whether the City has adequately alleged an association in fact enterprise because the City has never coherently set forth the constituency of the alleged association.[17] *Cf. United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) (stating that an association in fact is "a group of persons associated together for a common purpose of engaging in a course of conduct ... [and] is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit").[18]

---

Ohio Public Employees Deferred Compensation Program, a deferred compensation plan similar to the one at issue here, was not a resulting trust. *See Leadbetter v. Ohio Pub. Empl. Defer. Comp. Prog.,* No. 91–3076, 1993 WL 141068, at **3 (6th Cir. Apr. 30, 1993).

17. For sake of clarity, I note that my ruling is not based on a determination that the City cannot successfully allege an association in fact enterprise.

18. Most of the confusion on this issue stems from the City's initial decision to designate "the Plan" as the alleged RICO enterprise, followed by the City's attempt to expand the definition of "the Plan" to include the "Plan" participants, and possibly the "Plan" administrator and the City's

employees who actually work on the "Plan." If the City wants to allege an enterprise consisting of these constituents it can simply do so, without attempting a confusing shorthand designation, "the Plan." In this regard, the City should note that in *Portland Gen. Elec. Co. v. Westinghouse Elec. Corp.,* 842 F.Supp. 161 (W.D.Pa.1993), the case cited by the City at oral argument for the proposition that a nuclear power plant satisfied the definition of a RICO association in fact enterprise, the court noted that the plaintiffs' complaints described in detail the constituent elements of the alleged enterprises. *See, e.g.,* 842 F.Supp.at 167 ("The nuclear suppliers enterprise is alleged to be made up of 'Westinghouse, its divisions, subsidiaries, officers, employees, affiliates, individuals and other entities, including International Nickel Co. with whom Westinghouse

Because the City has failed to adequately allege an association in fact, I grant PEBSCO's motion for judgment that the Plan is not a valid RICO enterprise. Should the City choose to do so, it may seek leave to amend its amended complaint in a timely fashion.

### b. The City as an Enterprise

 PEBSCO next argues that although the City is a valid RICO enterprise,[19] PEBSCO did not participate in the operation or management of the City. Because the exact nature of PEBSCO's participation in the City's affairs is not clear, judgment on the pleadings in favor of PEBSCO is unwarranted.

Section 1962(c) requires that the defendant "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C.A. § 1962(c) (West 1984). The Supreme Court has held that liability under § 1962(c) only attaches to persons who "participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* —— U.S. ——, ——, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993). The Court noted that "RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required." *Id.,* —— U.S. at ——, 113 S.Ct. at 1170. Further, the Court held that liability under § 1962(c) "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.,* —— U.S. at ——, 113 S.Ct. at 1173 (quoting § 1962(c)).

The Third Circuit has recently formulated its interpretation of *Reves'* operation or management requirement:

> Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result. There must be a nexus between the person and the conduct in the affairs of an enterprise. The operation or management test goes to that nex-

us. In other words, the person must *knowingly* engage in "directing the enterprise's affairs" through a pattern of racketeering activity.

*University of Maryland v. Peat, Marwick, Main & Co.,* 996 F.2d 1534 (3d Cir.1993) (emphasis added) (citation omitted). Viewing the allegations in the pleadings in the light most favorable to the City, there remains an unresolved factual dispute: namely, the extent of PEBSCO's involvement in the operation and management of the Plan and the City with respect to its Plan-related functions. The City has averred that PEBSCO assumed responsibility not only for performing the Plan's ministerial functions, but also for marketing the Plan to City employees, answering employees' questions about the investment options, and counseling the City with respect to optimal investment media included in the Plan. Further, the City has alleged that PEBSCO performed these tasks in a fashion that permitted PEBSCO employees to elicit substantial commissions from the sale of Peoples policies. This suggests the type of *knowing* direction of an enterprise through a pattern of racketeering activity described in *University of Maryland.* Because a factual dispute remains as to the nature and extent of PEBSCO's participation in the operation and management of the City with respect to its Plan-related functions, I deny PEBSCO's motion for judgment on the pleadings.

An appropriate order follows.

### ORDER

AND NOW, this 13th day of January 1994, it is hereby ORDERED that defendant's motion for judgment on the pleadings (Document No. 21) is GRANTED IN PART and DENIED IN PART as set forth in the accompanying opinion.

---

contracted to supply goods and services to nuclear power plant owners throughout the world ...' ").

**19.** PEBSCO admitted at oral argument that the City met the statutory definition of a RICO enterprise. Tr. at 11.