J-A09006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERICALEA SORTINO DECKER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRENDAN M. DECKER | : | No. 2102 EDA 2021 |

Appeal from the Order Entered September 21, 2021
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2016-003940

BEFORE: NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JUNE 21, 2022**

Appellant, Ericalea Sortino Decker a/k/a Ericalea Decker Pool[1](Mother),
appeals from the order denying her request to relocate to Texas with the
parties' children, M.D. (born May 2013) and N.D. (born January 2015)
(collectively, the Children), and modifying the custody arrangement to include
increased partial physical custody of the Children's father, Brendan M. Decker
(Father). We affirm.

By way of background, Mother and Father married in September 2010
and separated in April 2016.[2] N.T., 5/26/21, at 80-81; N.T., 8/18/21, at 154.
During their marriage, they resided in Brookhaven, Pennsylvania, then moved

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother married T.P. (Stepfather) in December 2019.

[2] The parties' divorce was finalized in June 2018. N.T., 5/26/21, at 83.

to Media, Pennsylvania, after the Children were born.  N.T., 8/18/21, at 162-63.  Mother explained that she and Father separated as a result of Father's drug and alcohol issues.  N.T., 5/26/21, at 80-81.  Mother stated that Father was arrested on DUI charges in January 2016 and that she later found pills in both their home and in Father's car.  *Id.*  She also recounted several instances of domestic abuse and testified that she filed for an order of protection under the Protection from Abuse Act in 2016, which was negotiated to an order of exclusive possession of the home in Media.[3]  N.T., 5/26/21, at 78-79, 186-88; N.T., 8/18/21, at 215-20.

Mother filed a petition for custody of the Children in May 2016.  Under the trial court's interim custody order, the parties shared legal custody, Mother had primary physical custody, and Father had increasing periods of supervised physical custody.[4]  On August 23, 2017, the trial court issued an order awarding Father partial physical custody every other weekend from Friday at 6 p.m. to Sunday at 5 p.m., as well as a mid-week custodial period as agreed by the parties.[5]  Order, 8/23/17; N.T., 5/26/21, at 112, 114; N.T., 8/18/21,

---

[3] Father denied abusing Mother.  N.T., 8/18/21, at 200.

[4] The court also required Father to submit to 10-panel and ETG hair follicle drug tests, as well as drug and alcohol and psychological evaluations.  Order, 8/17/16.

[5] Father's physical custody graduated to this provision of custodial time after a period of three months.

at 154-56. Father and the Children maintained regular telephone contact.[6] N.T., 5/26/21, at 114; N.T., 8/18/21, at 167-68.

In December of 2019, Mother, who lives in Media and works as a neonatal nurse, remarried. N.T., 5/26/21, at 80-81, 84. Stepfather resides in Fayetteville, Texas. *Id.* at 17, 84. Stepfather has shared custody of his two children, who also reside in Texas. *Id.* at 11-13. He works as a railroad engineer and firefighter in Mississippi.[7] Mother indicated that although they lived apart at the time of their marriage, the plan was for Stepfather to secure employment in the northeast. N.T., 5/26/21, at 200, 202; N.T., 8/18/21, at 38-39. However, both she and Stepfather testified that he was unable to find a job with comparable salary and job security.[8] N.T., 5/26/21, at 51-53, 200.

_____

[6] Father testified that, while he previously had daily telephone contact with the Children, Mother began to limit these calls to Monday, Wednesday, and Friday at 6 p.m. without consultation or order. N.T., 8/18/21, at 167-68. Mother conceded that she had limited Father's telephone contact, indicating that the Children did not want to engage in calls with Father on a daily basis. N.T., 5/26/21, at 243-47.

[7] Stepfather explained that he is employed as a railroad engineer in Jackson, Mississippi, approximately seven hours from Fayetteville. *Id.* at 34-35. He currently works six days followed by five days off. *Id.* at 36-37.

[8] Stepfather expressed that he was originally going to transfer to another railroad "until they had a contractual change and it affected the hourly rate that they currently have. It essentially cut their hourly rate in half and made it to where outside seniority districts couldn't transfer . . . ." *Id.* at 51. Aside from difficulties securing railroad employment because of salary and employment protection issues, Stepfather also testified that he could not secure employment as a firefighter in Pennsylvania due to his age. *Id.* at 67-68.

Stepfather acknowledged the long-distance nature of the parties' relationship and noted that their strategy was "to communicate a lot and see each other when we could. Communication was the biggest foundation for it." *Id.* at 42. Both Mother and Stepfather stated that Stepfather visits Mother every two weeks and that the parties speak frequently. *Id.* at 83-84, 221. However, Mother recognized that being apart is "a strain on the marriage" and that she misses having Stepfather physically present. *Id.* at 83-84. Despite their frequent contact, she observed: "[I]t's still hard not being able to touch each other and embrace each other." *Id.* at 84. Stepfather confirmed the current arrangement is a "stressor" and that travel is "difficult." *Id.* at 15-16. He further admitted that travel to Pennsylvania causes him to sacrifice time with his own children. *Id.* at 15.

Mother filed a notice of intent of relocation and a petition for relocation to Weimar, Texas and enrollment of the Children in St. Anthony's School on October 22, 2020. N.T., 5/26/21, at 44, 57, 247-49. On November 10, 2020, Father, who resides in Wilmington, Delaware and works as an accountant,[9] filed a counter-affidavit in opposition.[10] N.T., 8/18/21, at 152-53.

---

[9] In addition to the residence Father shares with his fiancée, their son, and his fiancée's son, Father maintains an apartment in Newark, Delaware. N.T., 8/18/21, 61-62.

[10] Mother additionally filed a petition to modify custody on May 20, 2021 "out of an abundance of caution," given the request for relocation. N.T., 5/26/21, at 7-8.

On December 13, 2020, after Father told Mother that he was unable to transport the Children, Mother became concerned that Father was under the influence. Mother arrived at Father's apartment and found the Children crying and Father on the floor, unable to sit up. *Id.* at 26-27, 115-16. The only light in the apartment was from the Christmas tree, and Mother stated that the apartment was "superhot" and the Children felt warm. *Id.* at 116. As a result, Mother filed an emergency custody petition to suspend Father's custodial access on December 15, 2020. N.T., 5/26/21, at 115.

After convening a hearing on Mother's emergency petition on January 8, 2021, the trial court held its decision in abeyance. The court further required Father's physical custody be supervised by his parents or fiancée and ordered 15-panel and ETG hair follicle drug tests, as well as a drug and alcohol evaluation to be performed by Dr. V. Richard Roeder. Order, 1/20/21; N.T., 5/26/21, at 122-23. Hair follicle testing revealed the presence of valium, for which Father did not have a prescription, as well as the presence of alcohol at an amount approximately ten times the screening cutoff. N.T., 5/26/21, at 122-23; N.T., 8/18/21, at 191, 256-58. Additionally, in his evaluation, Dr. Roeder found moderate alcohol consumption equivalent to Father consuming 18-20 drinks per week and recommended that Father enroll in an intensive outpatient program. N.T., 5/26/21, at 239-40; N.T., 8/18/21, at 256-57, 261.

On February 4, 2021, Mother filed an emergency custody petition for contempt in which she alleged that, based on Stepfather's surveillance, Father exercised his custody without supervision, contrary to the custody order. N.T.,

5/26/21, at 30-32, 127-29. The trial court scheduled a hearing regarding Mother's pending emergency petitions, but in the interim, Mother reported an incident on February 21, 2021, where Father was hospitalized due to an eye infection and an alcohol withdrawal seizure while the Children were in his custody. *Id.* at 129-36.

On March 3, 2021, following a hearing, the trial court modified its August 2017 order and stated that Father's periods of physical custody must be supervised by his parents on the weekends and by his fiancée mid-week. The court further directed Father to install a Soberlink alcohol monitoring device[11] for use at pick-up and drop-off and to undergo urine testing every other week. Order 3/9/21; N.T., 5/26/21, at 136-37.

The trial court conducted hearings on May 26, 2021 and August 18, 2021, on Mother's proposed relocation and petition for modification of custody. Both Mother and Father were represented by counsel and each testified on their own behalf. The court also heard testimony from Stepfather,

---

[11] Father described Soberlink as "a handheld alcohol monitoring device where you blow into it. It takes a real-time picture of your face and alcohol level content, if any, when you blow in it. . . ." N.T., 8/18/21, at 189.

the Children's paternal grandmother, R.M.D., and Father's fiancée.  The court also spoke with the Children, *in camera*, on August 18, 2021.[12, 13]

At the time of the hearing, Mother sought to relocate with the Children to Fayetteville, Texas and to continue homeschooling.[14]  N.T., 5/26/21, at 25, 44-45, 57, 70, 95-97, 148, 211, 248-49.  Mother further indicated her intention not to work.  N.T., 5/26/21, at 156, 172-73; N.T., 8/18/21, at 53.  If the court granted the requested relocation, Mother proposed flying the Children back from Texas at her expense once a month around federal holidays for Father to exercise his custodial time over an extended weekend.

---

[12] Neither party was present and counsel for both parties agreed to waive their presence during the court's interview with the Children.  N.T., 8/18/21, at 291.  M.D., who was eight years old at the time, testified to liking school in Media and confirmed not wanting to relocate to Texas.  *Id.* at 298, 302, 305. N.D., who was six years old, testified that he thought he would like Texas because they could go to the waterpark and get ice cream.  *Id.* at 311-12. He admitted that he would be sad about not seeing his father and grandparents as much.  *Id.* at 314-15.

[13] The parties additionally presented, and the court admitted, numerous exhibits.  While not included with the certified record, we do not find this omission detrimental to our review given the testimony related to the exhibits. We admonish counsel that, "Appellant has the responsibility to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal."  **Commonwealth v. Wint**, 730 A.2d 965, 967 (Pa. Super. 1999) (citations and quotation marks omitted); **see also** Pa.R.A.P. 1921 Note (stating that "[u]ltimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials" (citation omitted)).

[14] Mother homeschooled the Children since March or April 2020 because M.D. had difficulties with virtual learning required by the COVID-19 pandemic. N.T., 5/26/21, at 84, 95, 97, 192-94; N.T., 8/18/21, at 44, 59.

She suggested providing Father with extended time during the summer and holidays. N.T., 5/26/21, at 169-170; N.T., 8/18/21, at 49-51, 68, 78-79. Mother testified that she would not move to Texas without the Children if the court denied her relocation request. N.T., 5/26/21, at 177; N.T., 8/18/21, at 27-28.

Both Mother and Stepfather acknowledged that relocation would serve to alleviate the stress on their relationship and testified that their goal was to raise their children together in the same home. N.T., 5/26/21, at 24, 176-77, 234; N.T., 8/18/21, at 37, 51, 55-56.[15] However, Mother admitted that, even if the relocation were granted, there would still be periods of time where Stepfather would be away from home due to his work in Mississippi.[16] N.T., 8/18/21, at 53-55.

Father testified that he has been sober since March 2021. N.T., 8/18/21, at 188, 192, 263. By way of corroboration, he noted that all Soberlink and urinalysis results since March 2021 were negative. *Id.* at 188-91, 192-93. He also testified that he was engaged in treatment. *Id.* at 195-96, 199-200, 261-64. Although Mother expressed concerns regarding Father's long-term sobriety, Mother acknowledged his current sobriety and negative test results. N.T., 5/26/21, at 137-40, 222, 240-42.

_____

[15] Mother acknowledged that relocation would allow Stepfather to spend more time with his children as well. N.T., 5/26/21, at 173; N.T., 8/18/21, at 56.

[16] Stepfather did report the possibility of a transfer to Texas due to a railroad merger. N.T., 5/26/21, at 66.

Father stated that he has only missed one mid-week custodial period. N.T., 8/18/21, at 226-29. He noted that he had a strong relationship with the Children, and that the Children had a bond with both his extended family and Mother's extended family. N.T., 8/18/21, at 158-59, 163-64, 171, 177-79, 204-06. Father's fiancée and Mother also confirmed this testimony. *Id.* at 88, 90-93, 122-23, 116-18. Further, Mother acknowledged that the Children had a good relationship and "adventures" with Father. N.T., 5/26/21, at 102, 167, 222. Father opposed any reduction in his custodial time with the Children and rejected the monthly proposal. *Id.* at 177.

Specifically, Father explained:

I want to be there to watch them grow up. They are six and eight years old. They need their father. They need me to develop and just provide the love and affection that I do every single time that I'm with them and vice versa. . . . I've been fighting so long just to get more time with them. . . . I want to be with my kids. I want to nurture them. I want to do what a father does and is supposed to do. I want the relationship I have with my father with them . . . . . I'm not going to be able to do it when they're in Texas. I mean, that's what it boils down to. I love them[. F]amily and children are everything to me.

*Id.* at 210-11.

After the hearing, but before the trial court issued its final custody order, the court issued an order directing that the parties to immediately enroll the Children in the Rose Tree-Media School District, which is located in Delaware County, Pennsylvania. On September 8, 2021, the court suspended the prior requirements of weekly urine testing and supervision imposed upon Father.

On September 21, 2021, the trial court denied Mother's request for relocation and her petition to modify the custody arrangement. The court awarded the parties shared legal custody and gave Mother primary physical custody with partial physical custody to Father. The court stated that during the school year, Father would have physical custody of the Children three weekends in a row from school pick-up on Friday to school drop-off on Monday, as well as a weekly dinner visit from school pick-up to 8:00 p.m. to be determined by agreement. During the summer, the court established an alternating weekly schedule with exchanges on Sundays at 6:00 p.m.

The trial court also established a visitation and holiday schedule. Among other provisions, the court prohibited Father from consuming alcohol or non-prescription drugs or medication during his custodial time, required him to utilize Soberlink during custodial exchanges,[17] and to continue attending Alcoholics Anonymous.

The trial court issued findings of fact and conclusions of law in which it addressed and analyzed both the relocation and custody factors. In rendering its decision, the trial court emphasized that Mother knowingly entered into a long-distance marriage with Stepfather, and that she subsequently wanted to relocate to Texas so the couple could raise her children and stepchildren together. Am. Findings of Fact and Conclusions of Law, 9/23/21, at 36-38.

_____

[17] Rather than requiring the immediate submission of results, the court ordered Father to maintain results and submit them to Mother and counsel upon reasonable request.

- 10 -

Importantly, the trial court noted that Stepfather would continue to work in Mississippi, which would keep him away from home for periods of time. *Id.* at 38. The court acknowledged the Children's relationships with Father, their paternal half-brother, and extended family, including paternal grandparents, and the importance of maintaining these relationships. *Id.* at 28, 34-39. While recognizing Mother's concerns about Father's substance abuse, the court also noted Father's compliance with Soberlink and urinalysis, all of which have yielded negative results, and cooperation with prior provisions of supervision. *Id.* at 32-33.

On October 12, 2021, Mother timely filed a notice of appeal and simultaneously filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a responsive opinion on November 18, 2021.

On appeal, Mother raises forty issues. For ease of analysis, we have reduced them to three categories:

1. Mother contends that the trial court committed an error of law and abused its discretion in finding that it was in the Children's best interests to modify the custody order and deny her petition for relocation.

2. Mother contends that the trial court committed an error of law and abused its discretion by modifying Father's periods of custody *sua sponte*, and that this modification violated her right to due process.

3. Mother contends that the trial court committed an error of law and abuse of discretion in finding any of Father's testimony credible, and by denying Mother's request to present evidence regarding Texas schools.

Mother's Brief at 4-14.[18]

## Mother's Rule 1925(b) Statement

Before addressing Mother's claims, we must determine whether her issues have been properly preserved for our review. Father argues that Mother's Rule 1925(b) statement is repetitive, vague, voluminous and, thus, leads to a justifiable inference that none of the issues raised are meritorious. Father's Brief at 8-12.

Our Supreme Court has explained that raising a large number of issues is not effective appellate advocacy and is "borderline abuse of the legal system[.]" ***Commonwealth v. Robinson***, 864 A.2d 460, 480 n.28 (Pa. 2004). The Court stated that, "**multiplying assignments of error will dilute and weaken a good case** and will not save a bad one." ***Id.*** (emphasis in original) (citation omitted).

With respect to waiver, this Court has explained:

Our law makes it clear that Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement. Rather, the statement must be "concise" and coherent as to permit the trial court to understand the specific issues being raised on appeal. Specifically, this Court has held that when appellants raise an "outrageous" number of issues in their 1925(b) statement, the appellants have deliberately circumvented the meaning and purpose of Rule 1925(b) and have thereby effectively precluded appellate review of the issues they now seek to raise. We have further noted that such "voluminous" statements do not identify the issues that appellants actually intend to raise on appeal because the briefing limitations contained in Pa.R.A.P. 2116(a) makes the raising of so many

_____

[18] In her brief, Mother addresses these errors "under three sections related to the following arguments: I. Petition to Modify Custody, II. Petition for Relocation, and III. Evidentiary Record." Mother's Brief at 4.

issues impossible. Further, this type of extravagant 1925(b) statement makes it all but impossible for the trial court to provide a comprehensive analysis of the issues.

*Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007) (citations omitted, formatting altered).

Here, Mother's eight-page Rule 1925(b) statement includes forty points of alleged trial court error. However, Mother's voluminous Rule 1925(b) statement does not impede our appellate review. While not necessarily clear and concise, we are able to discern Mother's purported allegations of error, as was the trial court in its opinion filed on November 18, 2021.[19]

Therefore, we will address Mother's claims.[20]

### Modification of Custody Order and Denial of Relocation

Mother's first set of issues challenge the trial court's order modifying the existing custody order and awarding Father additional custodial time. Specifically, Mother argues that the trial court's decision was contrary to the Children's best interests and against the weight of the evidence. Mother's Brief at 26-28. In support, Mother notes that Father has a history of alcohol and substance abuse that was serious enough to require court-ordered monitoring. *Id.* at 26-27. Mother argues that, historically, Father exercised

---

[19] We remind counsel that a Rule 1925(b) statement "must be 'concise' and coherent as to permit the trial court to understand the specific issues being raised on appeal." *Tucker*, 939 A.2d at 346.

[20] As noted previously, Mother addresses her alleged errors in three sections, including (1) the trial court's denial of her petition to modify custody, (2) her petition for relocation; and (3) the evidentiary record. *See* Mother's Brief at 4. Therefore, we will address Mother's arguments in that order.

limited and supervised physical custody. *Id.* at 27. Additionally, she contends that the increase in Father's custodial time erodes the Children's stability and limits her ability to provide for their educational, medical, and social needs. *Id.* at 27-28.

Mother also challenges the trial court's determinations regarding certain custody and relocation factors. *Id.* at 28-41. Mother contends that Father's involvement with the Children has been limited and that she has been the Children's primary physical custodian, providing for all of their educational, medical, social, and emotional needs, nurturing them and affording them stability. *Id.* at 28-32, 38. Mother asserts that Father's extended family is not nearby and "historically has not been part of the [C]hildren's lives until they were needed as custodial supervisors due to Father's addiction issues." *Id.* at 31-32. She blames Father for any conflict, stating, "[I]t is Father's misrepresentations, abuse of alcohol and non-prescription medications and his concealing the same, which have given Mother a viable a palpable suspicion as to Father's credibility to parent." *Id.* at 33. She maintains that her quality of life would be "significantly enhanced" as a result of relocation due to her "ability to stay home with the [C]hildren, to home school them and to have more quality time with the [C]hildren." *Id.* at 40. She suggests such improvement would thereby positively impact the Children. "[I]mproving Mother's quality of life and the overall enhancement of the relationship with Mother and her husband would of necessity and by implication improve the [C]hildren's quality of life." *Id.* at 41. Moreover, Mother asserts that her

proposal would provide Father the same amount of overnights per month with her being responsible for transportation. *Id.* at 39-40.

In custody cases under the Child Custody Act (the Act), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted); *see also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015).

This Court has consistently held that

> the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In addition,

> [a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable

- 15 -

as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. **See** 23 Pa.C.S. §§ 5328, 5338. "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral[,] and spiritual well-being." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Section 5328(a) sets forth the best interest factors that the trial court must consider in awarding custody. **See E.D. v. M.P.**, 33 A.3d 73, 79-80 n.2 (Pa. Super. 2011).

Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Where a request for relocation of a child along with a parent is involved, the trial court must also consider the following relocation factors set forth within Section 5337(h) of the Act:

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

Further, with regard to the custody and relocation factors, we have stated:

**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order. Section 5337(h) requires courts to consider all relocation factors. The record must be clear on appeal that the trial court considered all the factors.

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[] § 5323(d). Additionally, [S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen Section 5328[(a)] custody factors prior to the deadline by which a litigant must file a notice of appeal.

In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014) (some citations omitted, formatting altered).

Regarding the custody and relocation factors, this Court has determined that the trial court is required to consider all the applicable factors. *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011). Although the trial court is required to give "weighted consideration to those factors which affect the

- 19 -

safety of the child" pursuant to 23 Pa.C.S. § 5328(a) and 23 Pa.C.S. § 5337(h), this Court has acknowledged that the amount of weight a trial court gives any one factor is almost entirely discretionary. **M.J.M. v. M.L.G.**, 63 A.3d 331, 339 (Pa. Super. 2013).

Critically, we have explained that

> it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. **See A.D. v. M.A.B.**, 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations . . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.").

**Id.**

Absent an abuse of discretion, we will not disturb a trial court's findings of fact or determinations regarding witness credibility or the weight of the evidence. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527. As we stated in **King v. King**, 889 A.2d 630 (Pa. Super. 2005), "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, [giving] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion . . . ." **King v. King**, 889 A.2d at 632 (citation omitted).

Here, in its amended findings of fact and conclusion of law, the trial court addressed and analyzed the custody factors pursuant to Section 5328(a) and relocation factors pursuant to Section 5337(h). Am. Findings of Fact and

- 20 -

Conclusions of Law at 26-39. The court determined that custody factors 6 and 13 favored Father, and custody factor 15 favored Mother. The court found that the remaining custody factors favored both or neither party. *Id.* at 26-33. With respect to the relocation factors, the court concluded that factors 2, 3, 5, and 6 favored Father, and relocation factor 4 favored Mother. The court further found that relocation factor 1 favors both parties. *Id.* at 34-39.

Upon review of the evidence, the trial court determined that relocation would benefit Mother, but it would not benefit the Children. The trial court explained that relocation would deprive the Children of their relationships with Father, their paternal brother, and both their maternal and paternal extended families. *Id.*

Specifically, the trial court explained:

. . . . Mother was fully aware of the circumstances regarding distance prior to her marriage since she met her husband in Texas on her vacation. It is not in the best interests of the [C]hildren to now be shuttled to Texas simply because Mother and her husband are frustrated with the stress of their long[-]distance relationship. Importantly, Mother's desire to have her children grow up with her husband's children does not outweigh the bond that they have not only with their Father but also with their younger brother. Mother testified that she would homeschool her children upon relocation which is exactly what she has been doing until the recent order to return to public school. Therefore, the relocation to Texas would not have improved their educational prospects. Also, if Mother were to relocate the [C]hildren to Texas and stop working outside the home, the [C]hildren would not have had any more time with her than they have been or do now. The benefit of not working would solely be to Mother. Mother's motivation is clearly for her own comforts and those of her husband and not in any way related to the best interests of the [C]hildren.

*Id.* at 38.

Although the trial court recognized Father's issues with substance abuse, the court noted Father's continued compliance with Soberlink and urinalysis testing, which have yielded negative results, and Father's cooperation during the period of time where he was only allowed supervised visits with the Children. *Id.* at 32-33.

Further, with respect to the trial court's decision to increase Father's custodial time with the Children, the court explained:

> [This court] considered all evidence presented, including Father's substantial work towards sobriety, the close and loving bond between Father, the [C]hildren, and their younger paternal brother, and Father's willingness to assume primary custody. Father testified that he wants to be present for his children growing up, that they need him to develop and to provide them with love and affection. Father further testified that in five years he has never missed a day of visitation with his children except for one mid-week dinner visit. Father credibly demonstrated a desire to be as involved as possible in the [C]hildren's lives and to have as much contact with them as possible.

Trial Ct. Op., 11/18/21, at 18 (unpaginated).

With respect to relocation, the trial court recognized that although Mother would benefit from the relocation, the Children would not. Specifically, the court explained:

> The record supports the finding that relocation of the [C]hildren to Texas is not in the best interests of the [C]hildren and would not improve their general quality of life. Mother made a decision to marry a gentleman who at the time of their courtship and marriage lived in Texas. She made that decision fully aware of the difficulties that a potential long-distance relationship could present. [Stepfather] is absolutely unwilling to take a substantial pay cut to live with his wife, to move closer to Pennsylvania

- 22 -

without a pay cut, and to leave his Texas[-]based family and children. Mother supports his position and is willing to uproot her children a substantial distance away from their Father, younger brother, maternal and paternal extended family members, community, and school.

Mother failed to articulate any improvement to the [C]hildren's lives sufficient to warrant relocation to Texas. She attempted to address this issue by testifying that upon relocation she would no longer work outside the home (at present she is a full-time registered nurse)[,] however, the amount of time that she would spend with them would not differ from the amount of time that she spends with them here in Delaware County. At present, Mother works an overnight nursing shift, and the [C]hildren have in home babysitting care. Although there are definite benefits to children having a parent who does not work outside the home, such a situation would not change or improve the lives of these particular children based on that reason — their time physically in their Mother's presence would be almost identical to the time that they have at present. Therefore, Mother not working outside of the home poses no improvement to the [C]hildren's lives and was deemed by the [t]rial [c]ourt to be insufficient to warrant relocation.

Neither Mother nor [Stepfather] testified as to any financial difficulties within the two households, just that they preferred not to live separate and apart. Mother has determined that the best way to address their finances is for her and the [C]hildren to live in Texas, eliminate the expenses of her home in Delaware County and to depend on [her husband]'s income alone. This idea makes sense since the cost of living is lower in Fayetteville, however, with the two incomes that the couple presently has they are able to afford the separate homes. The [t]rial [c]ourt admits in its analysis of the relocation factors that relocation would certainly improve Mother's overall quality of life[,] however[,] the [t]rial [c]ourt was hard[-]pressed to identify any improvement to the [C]hildren's lives.

Although Mother's desire to create a new family unit with her husband's children is a reasonable idea, this [t]rial [c]ourt could not ignore the already existing bond that the [C]hildren have with their younger brother. The sibling bond between the [C]hildren and their younger brother outweighs their potential relationship with Mother's stepchildren and is sufficient, coupled with other factors, to deny relocation.

- 23 -

Mother further testified that she would fly the [C]hildren once a month to the Philadelphia area for Father to have custodial time as well as extended periods of time during school breaks.[21] The [c]ourt did not find Mother's stated likelihood to engage in this plan credible in light of the past animosity between the parents and her ongoing contempt for Father's parenting skills. As the [t]rial [c]ourt acknowledged in its Findings of Fact and Conclusion of Law, Father's sobriety was carefully scrutinized as a factor affecting his parenting capacity and same was taken into account by this court when determining an appropriate physical custody schedule in light of Mother's request for relocation. This [t]rial [c]ourt acknowledged that Father has had difficulties with substance abuse in the past[,] however[,] this [t]rial [c]ourt did not find that Father should be effectively punished through relocation. The [t]rial [c]ourt found that there were sufficient safeguards in place to as reasonably as possible provide for the safety of the [C]hildren while in Father's care. The [t]rial [c]ourt further found that Father had complied with prior court orders regarding supervision, Soberlink[,] and urine testing and that he understood the important relationship between his sobriety and the [C]hildren's safety.

*Id.* at 7-9 (unpaginated). Hence, these issues are without merit.

Based on our review of the record, we discern no abuse of discretion by the trial court in granting Father additional custodial time with the Children and denying Mother's relocation petition. In concluding that additional custodial time with Father was in the Children's best interest, the court emphasized that it would not disturb the Children's educational or extra-curricular activities, nor would it interfere with Mother's duties. *Id.* at 18-19. The trial court analyzed and addressed each factor as required by Section

_____

[21] The trial court further found such frequent travel not in the Children's best interests. Trial Ct. Op. at 16 (unpaginated); *see also* Am. Findings of Fact and Conclusions of Law at 35.

5328(a) in establishing its custody order, including Father's additional partial custodial time, as well as the factors required by Section 5337(h). *See* 23 Pa.C.S. § 5328(a); *see also E.D.*, 33 A.3d at 79-80 n.2; *see also J.R.M.,* 33 A.3d at 652.

To the extent Mother challenges the weight attributed to any factor by the trial court, we likewise find no abuse of discretion. As stated above, the amount of weight that a trial court gives to any one factor is almost entirely within its discretion. *See M.J.M.*, 63 A.3d at 339. Instantly, the trial court analyzed and addressed each of the custody and relocation factors pursuant to Section 5328(a) and Section 5337(h). *See* Am. Findings of Fact and Conclusions of Law at 26-39. Further, the trial court's findings and determinations regarding the custody and relocation factors set forth in Section 5328(a) and Section 5337(h) are supported by competent evidence in the record. Therefore, we will not disturb them.[22] *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527.

---

[22] To the extent that Mother challenges the trial court's inference that she would not comply with the terms of an order as to Father's custody if relocation were granted, we conclude that the trial court made its credibility determination related to relocation factor 3 (23 Pa.C.S. § 5337(h)(3)). This factor concerns the feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements. Considering the logistics and financial circumstances of the parties, we conclude that this finding is supported by record.

## Modification of Custody Order *Sua Sponte*

Mother also argues that the trial court erred in modifying Father's custody order *sua* sponte and, in so doing, violated her right to due process. Mother's Brief 24-26. Mother contends that she "was not afforded the required notice sufficient to ensure she had the opportunity to prepare and thereafter properly advocate her opposition to Father's custody modification, separate and apart from the relocation requested." *Id.* at 26. In so arguing, Mother likens the situation to that where an order is improperly modified as a result of a contempt filing. *Id.* at 25.

"Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *In re J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005) (citation omitted). "Due process is flexible and calls for such procedural protections as the situation demands." *In re Adoption of Dale A., II*, 683 A.2d 297, 300 (Pa. Super. 1996) (citations omitted).

Concerning Mother's claim that the modification of custody is tantamount to the trial court finding contempt, where a petition to modify had not been filed, we note that this Court has stated:

> In addition to the foregoing, we emphasize that Father's due process rights were violated by the actions taken by the court, because Father had no notice that custody would be at issue in the proceedings. Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment. Without notice to the parties that custody was at issue, the trial court could not assume that the parties

ha[d] either sufficiently exposed the relevant facts or properly argued their significance. Consequently[,] neither we nor the trial court can make an informed, yet quintessentially crucial judgment as to whether it was in the best interests of the [child] involved to give sole legal [and physical] custody to the mother.

*Langendorfer v. Spearman*, 797 A.2d 303, 309 (Pa. Super. 2002) (citations and quotation omitted). However, where there is notice that custody is at issue, we have upheld modification. *See C.A.J. v. D.S.M.*, 136 A.3d 504, 509 (Pa. Super. 2016) (stating that "[b]ased on our review of relevant case law, we conclude that if the parties had notice that custody would be at issue, the court is permitted to modify custody without a pending petition for modification").

Instantly, Mother filed a request for relocation as well as a petition to modify. Pet. for Relocation, 10/22/20, at 1-4 (requesting relocation and award of primary physical custody); Pet. to Modify Custody, 5/20/21, at 1-2. Therefore, Mother put the issue of custody before the court and therefore had notice. Accordingly, we find no due process violations, and no error in modifying Father's partial physical custody. Accordingly, Mother is not entitled to relief.

## Evidentiary Claims

Mother's remaining issues challenge the evidence supporting the trial court's conclusions. Mother's Brief at 41-43. First, Mother contends that the trial court erred in finding any of Father's testimony credible under the doctrine of false in one, false in all. Mother's Brief at 41-43.

As this Court has explained:

"False in one, false in all" is a concept for assessing the weight of evidence. The maxim is simply a translation of the Latin phrase "*falsus in uno, falsus in omnibus*." It currently means that a jury may disregard the testimony of a witness if the jury believes that witness deliberately, or willfully and corruptly, testified falsely about a material issue.

*Commonwealth v. Vicens-Rodriguez*, 911 A.2d 116, 117 (Pa. Super. 2006) (footnote omitted and formatting altered). This Court has further stated:

The maxim has been limited, qualified, criticized, and, in a sense, rejected by both authors and courts, so that what remains might be stated thus: When a fact finding body concludes that a witness has deliberately falsified in his testimony on a material point this should be taken into consideration, along with many other tests, in determining what credence should be given to the balance of his testimony.

*Id.* at 118-19 (citation omitted). Therefore, "the court or jury needs to look at the testimony of the particular witness as a whole and the evidence in entirety to determine what to believe and what not to believe." *Id.* at 119.

Pointing to a prior emergency hearing where the trial court found Father not credible[23] under the doctrine of false in one, false in all, Mother asserts that trial court should not have found Father's testimony credible nor given it

_____

[23] At a hearing on January 8, 2021, the trial court made specific findings that Mother testified credibly, even though Mother did not have direct evidence of what had occurred before she entered the apartment. N.T., 1/8/21, at 92. The trial court found Father's testimony that he was on the floor because he was "playing a game" incredible. *Id.* Accordingly, the trial court ordered a hair follicle test and held its decision on suspension of his custody under advisement. *Id.*

any weight. *Id.* Notably, Mother concedes that this doctrine is not mandatory. *Id.* at 41 (citations omitted).

While acknowledging that it previously found Father's testimony not credible, the trial court stated:

> . . . . Unlike at the March 2021 hearing,[24] the [t]rial [c]ourt found Father at trial to be forthcoming, honest, and willing to accept responsibility for his past mistakes, namely the alcohol abuse. The [t]rial [c]ourt also found that he was capable of and willing to work towards providing a safe and sound environment for the children. The [t]rial [c]ourt also determined the credibility of Father's testimony in light of the supporting documentary evidence of the negative urine test results and Soberlink check ins. In light of these credibility assessments, the [t]rial [c]ourt made an informed decision as to Father's credibility and the weight appropriately given to his testimony.
>
> Finally, the doctrine of "False in One/False in All" is not a mandate upon a factfinder but only provides for what it may do, not what it must do or must not do. This [t]rial [c]ourt has the discretion, to believe all, part, or none of the witness's testimony and make its own independent assessment of the importance of any and all testimony.

Trial Ct. Op. at 11-12 (unpaginated).

On this record, we agree with the trial court's conclusions, accordingly, Mother is not entitled to relief on this issue.

In her second evidentiary claim, Mother argues that the trial court erred by denying her request to present evidence regarding the quality of schools in Texas, as compared to schools in Pennsylvania. Mother's Brief at 43-44.

---

[24] While the trial court and Mother both referred to the March 2021 hearing, it appears that they intended to reference the January 8, 2021 hearing, given the court's discussion of Father's credibility at page 28, n.23.

She argues that although the trial court deemed the information irrelevant, Father was permitted to inquire about the Texas school system, and therefore the trial court erred by not permitting Mother to present evidence regarding the schools. *Id.*

In its Rule 1925(a) opinion, the trial court concluded that Mother waived her claims concerning the comparative quality of the schools. Trial Ct. Op. at 13-14 (unpaginated). The trial court notes that Mother agreed with it as to the lack of relevance given her intention to continue homeschooling the Children. *Id.* at 13 (unpaginated). Father disagreed to the homeschooling, therefore the trial court allowed Father's counsel to cross examine Mother. *Id.* Although the trial court permitted Mother to introduce further relevant evidence, counsel chose not to present additional evidence regarding the Texas school system. *Id.* at 13-14 (unpaginated). Accordingly, the trial court concluded that Mother waived this issue. *Id.*

Our review of the record confirms the trial court's reasoning; therefore we agree with the trial court that Mother waived these claims.

The record reveals that the trial court allowed further questioning by Father's counsel regarding the schools, but the trial court also gave Mother's counsel the opportunity to introduce additional evidence which counsel did not pursue. N.T., 8/18/21, at 8-10. Accordingly, Mother waived these claims. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court). Accordingly, Mother is not entitled to relief.

For the foregoing reasons, we affirm the trial court's order.

Order affirmed.

Judge Sullivan joins the memorandum.

Judge Pellegrini concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/2022